Grafton, }
June, 1894. }

                          SPAULDING *v.* GROTON.

Upon a petition to the selectmen for a highway between two fixed bounds,
their laying out of a way beginning at one of the bounds, but not extend-
ing to the other, may be valid.

In the return of selectmen laying out a highway, the description of one of
the courses as extending from a fixed bound "southerly" a certain dis-
tance over land of A, and thence "south" over land of B to another bound,
does not necessarily show that the return is void for uncertainty.

A road constructed on other courses than those described in the judgment
laying it out is not a legal highway.

CASE, for personal injuries, alleged to have been occasioned
by a defective highway. Facts agreed. April 16, 1886, a peti-
tion signed by several parties was presented to the selectmen of
Groton, for a new highway, "beginning at a stake and stones
near the water-trough nearly opposite the house of John Irving
on the highway leading from Rumney to Groton Hollow, so
called, in said town of Groton; thence in a southerly direction
about 100 rods to a stake and stones in said highway near the
top of the last steep hill on said highway; thence following said
highway as now traveled to a stake and stones in said highway
near the southerly lane leading to the farm of Clinton French;
thence in a southerly direction about 75 rods to a stake and
stones near the schoolhouse in said Groton Hollow, in said town
of Groton." May 6, 1886, the selectmen laid out a highway and
made a return thereof as follows: "We are of opinion that for
the accommodation of the public there is occasion for the same,
and we therefore lay out a new highway as requested in said
petition, beginning at a stake at the water-trough nearly oppo-
site the house of John Irving; thence in a southerly direction
120 rods over land of Charles Spaulding; thence south over land
of A. P. French's heirs 45 rods to a stake in the old highway,
and the highway to be 50 feet wide." The last bound mentioned
in the return is not identical with the last bound mentioned in
the petition, but is about 178 rods from it in a northerly direc-
tion. The road as constructed runs on various courses. If it is
held that the road as laid out and constructed is not a legal high-
way, the plaintiff is to become nonsuit; otherwise, the case is to
stand for trial.

*George M. Fletcher, Joseph C. Story,* and *Bingham & Mitchell,*
for the plaintiff.

*Fling & Chase* and *Frank N. Parsons,* for the defendants.

*Per Curiam.** 1. The judgment of the selectmen laying out the way in question, having been rendered on a petition properly before them (G. L., c. 67, s. 1), is not open to collateral attack, if the way laid out is substantially the way prayed for in the petition. *Brown* v. *Brown*, 50 N. H. 538; *Horne* v. *Rochester*, 62 N. H. 347, 348, 350; *Fowler* v. *Brooks*, 64 N. H. 423, 424. If the execution of the power was wrongful or defective, it may be revised, corrected, or vacated, in a direct proceeding seasonably instituted for that purpose by any one having a rightful interest in the matter (*State* v. *Kennedy*, 65 N. H. 247); but until this is done, the laying out is conclusive evidence of the duty of the town to repair the highway in a suit against it for damages incurred in consequence of the defective condition of the road. *Horne* v. *Rochester*, supra.

The defendants insist that the record shows conclusively that the selectmen had no jurisdiction to lay out the way described in their return, because the petition asked for a road from one definite terminus to another, and the way laid out does not extend to the second terminus. It is claimed that the termini of the petition are definite bounds, that determine with exactness the extent of the road the selectmen are authorized to lay out, and that a laying out that does not begin and end at the points arbitrarily established in the petition is absolutely void. That a petition in writing is necessary to give the selectmen jurisdiction can admit of no doubt (*State* v. *Morse*, 50 N. H. 9); and it is also true that a petition for one highway does not authorize them to lay out an entirely different one (*Eames* v. *Northumberland*, 44 N. H. 67, 69); but the question here presented is, whether the selectmen have the power to lay out a way over a part of the course prayed for, when the public good does not require the whole of it. Does it necessarily follow from the record of such a judgment that the petitioners asked for one highway and the selectmen laid out another? If such is the legal effect of the judgment, it is not protected against collateral attack, because the selectmen had no jurisdiction of the subject-matter which the judgment purports to determine. *Fowler* v. *Brooks*, 64 N. H. 423.

By the act of February 8, 1791, it was provided: "That at any time hereafter, when there shall be occasion for any new highways or private roads, to be laid out in any town or place in this state, the selectmen of such town or place, be, and hereby are empowered, on application made to them, if they see cause, to lay out the same, whether such highway or road be for the benefit of the town, or public in general, or for the benefit of the person or persons applying only." The act of July 3, 1829, re-enacted this statute, adding the words "in writing" after the

---

*See foot-note on page 22.

words "made to them." Laws, *ed.* 1830, *p.* 573. Before that time the statute did not in terms require that the application for a new highway should be in writing; nor did it in terms make the jurisdiction of the selectmen depend upon the allegation, in the verbal or written application, of a fixed bound at each terminus of the proposed way. If the public good required the establishment of a more convenient means of communication between two places, the legislature furnished little direct evidence of a purpose to limit the jurisdiction of the selectmen in laying out the way by definite bounds, initial or final, arbitrarily established by interested parties.

By the statute of 1791, two questions of a judicial character were submitted to the determination of the selectmen, in case of an application for a public way: First, is there occasion for a way for the public accommodation between the points indicated in the application? Second, if it is found that such occasion exists, by what route will the public good be best subserved? Having decided the first question in the affirmative, they were not required by the statute to decline to answer the second, whenever the public good would not be promoted by a road having the exact termini established by the petitioners. The laying out of the most feasible route between the two fixed bounds is not necessarily equivalent to the laying out of the best route for the accommodation of public travel between the same bounds. In the one case the test is arbitrary and unyielding, in the other it is governed by a reasonable public necessity. Unequivocal language in the statute would be necessary to overcome the natural presumption, that the legislature intended to authorize the selectmen to employ the latter test in laying out a public highway. If the selectmen find that there is "occasion" for better means of communication between the points set out in the petition, there is no inconsistency in a judgment laying out so much of the proposed way as is necessary to fulfill the primary purpose of the application. Any other judgment would result in apparent injustice, which it is not to be presumed the legislature intended, when it conferred jurisdiction upon selectmen to lay out highways " on application made to them, if they see cause." The same injustice would result by such a narrow construction of the statute as would occur if in assumpsit the plaintiff were turned out of court upon a verdict giving him less than his entire claim. Referring to a similar statute the court say in *Princeton* v. *County Commissioners,* 17 Pick. 154, 156 : " But it is contended, on the part of the present petitioners, that the petition for a highway prayed for, is one entire thing or subject-matter of judicial consideration and decision, and that it must be granted in whole, or rejected in whole. As a general rule, supposing the question to stand on the general statute of 1786, *c.* 67, *s.* 4, giving

power to the Court of General Sessions, upon application made therefor, to lay out new highways . . . without any express limitation, the construction contended for would hardly seem to be analogous to the course of judicial proceeding, where usually, upon the maxim that the whole embraces all the parts, a prayer, claim, or demand for a larger sum or quantity, is taken to be a prayer or claim for all the sums or parts of which it is composed, and under such claim the party shall recover such part as he can establish title to. . . . Nor is there any case that I am aware of, in which it has been held under the statute of 1786, the Court of Sessions could not lay out a part of the highway prayed for."

In the revision of 1842 it was provided that " selectmen upon petition are authorized to lay out any new highway . . . within their town for which there shall be occasion, either for the accommodation of the public or the person applying." R. S., *c.* 49, *s.* 1. This language with slight and unimportant changes was adopted in the Compiled Statutes, *c.* 52, *s.* 1, the General Statutes, *c.* 61, *s.* 1, and in the General Laws, *c.* 67, *s.* 1, which were in force when the road in question was laid out.

In *Eames* v. *Northumberland*, 44 N. H. 67, 68, it is said : " The petition being the foundation of their [the selectmen's] jurisdiction to lay out a particular highway, it follows that upon a petition for one highway they have no authority to lay out another ; for there is no petition for such other highway before them, and without a petition they cannot act." It is not necessary to controvert this proposition to hold that the laying out of a part of the way prayed for may be authorized by the statute. The petitioners in effect ask for a new highway to accommodate public travel between two points. The public convenience or necessity is the important fact to be established to authorize the taking of private property for highway purposes (*Underwood* v. *Bailey*, 59 N. H. 480); but when that fact is found, the location of such a way as will most conveniently accommodate the public travel between the termini in the petition is the way which the statute authorizes the selectmen to lay out. If they find that the public convenience will be best promoted by laying out a road over half of the route proposed by the petitioners, the verbal distinction that such a road is not the road prayed for would not be legally true. As the petitioners represent the public, the highway they ask for must necessarily be the most convenient one under all the circumstances for communication between the localities indicated in the petition. The most inconvenient one could not be legally laid out; nor could it be the one for the laying out of which the petition was filed. By applying excessively technical rules to the language used in highway petitions, the jurisdiction of selectmen to act may be so limited as to compel them to deny applications for new highways, simply because

by a narrow definition of the word "termini" they do not think the public necessity requires the road prayed for. The result is that in many cases the laying out of a necessary highway requires a series of applications entailing long and expensive litigation, much of which would be avoided by a reasonable interpretation of the petitioners' language. In other cases, selectmen, assuming that their jurisdiction was strictly limited by the exact termini mentioned in the petitions, have undoubtedly laid out highways in accordance therewith, leaving the public to suffer the consequences of inconvenient, expensive, and absurd termini.

Formerly it was customary for petitioners to designate the intermediate bounds of the proposed highway; "and the result was a failure to lay out the ways, and delay, and increased expense, even in cases where the public good required roads to be laid out between the termini of the ways asked for, but not upon lines to which they were limited. In such cases, the committee or commissioners having no authority to lay out the ways in any other places than those specified in the petition, the ways were of course not laid out, and the public were left to suffer from the want of them." *Wiggin* v. *Exeter*, 13 N. II. 304, 307. To remedy these evils, a rule of court was adopted (Rule 85) providing that: "Petitions for highways must give the termini of the road prayed for, without fixing any intermediate bounds." "The intention and purpose was," the court say in *Wiggin* v. *Exeter*, "to prescribe such a form of petition, that in conformity with its terms, and consistently therewith, the committee or commissioners might exercise their own discretion as to the particular localities over which the ways should pass between the termini specified." It has not been held that a description of a proposed way in a petition by intermediate bounds necessarily limits the jurisdiction of the selectmen or the court, so that a judgment laying out the way on a different route between the termini might be collaterally attacked. But if the identical way specified in the petition determines with exactness the beginning and ending of the way that may be laid out, it is not apparent why, if intermediate bounds are given, they do not fix with more definiteness the precise way desired and the subject-matter for judicial investigation. The reason for the rule dispensing with intermediate bounds was that they unnecessarily limited the discretion of the tribunal charged with the duty of ascertaining the public need. "Experience has shown the necessity of leaving it to the discretion of the commissioners to determine the line of the way between the termini given, with no other limit." *Wiggin* v. *Exeter*, *supra*, 309. But the same public necessity exists for leaving to them the question of the exact location of the termini. On the theory that the bounds of the petition prescribe with exactness the beginning and ending of the way, the result often is a long,

circuitous route, much more expensive and inconvenient than a straight route that might be laid out between other bounds. The public good requires the latter way, if it accommodates the same public travel that the former way accommodates. A determination that intermediate bounds do not mark the best course for the highway which the public good requires, is often necessarily equivalent to a finding that the proposed termini are not the best. And the public necessity that requires a judicial location of substantially all intermediate bounds does not exclude a judicial location of the most suitable and convenient termini. When, upon petition, notice, and a hearing of all parties in interest, the fact is alleged and proved that a new highway is necessary for the accommodation of public travel between two points in the same town, the selectmen are authorized to lay out a highway which in their opinion will best promote the line of public communication desired. The termini set out in the petition are useful as indicating the general purpose of the way. They are not territorial bounds of the selectmen's jurisdiction under the petition.

"It is quite clear, that highways in this state can only be laid out upon a written petition, and that they must be laid out substantially in conformity therewith. A road cannot be laid out upon a route substantially other and different from that described in the petition, fairly and properly understood according to its legal construction and intendment." *Raymond* v. *Griffin*, 23 N. H. 340, 345. In *Stinson* v. *Dunbarton*, 46 N. H. 385, the petition was for a highway between two points " by the most direct and convenient route." The way laid out was described as beginning at one of the points, thence over an established highway 311 rods, thence on a line through fields 624 rods, and thence by another established highway seventy rods to the other point. There was no occasion for a new location of the old highway seventy rods in length. That part of the laying out was wholly unnecessary so far as the public convenience was concerned. The public good did not require its re-location, and if the way had been described as stopping at the end of the second course, the way laid out would have been none the less the way prayed for. It would have afforded the same public accommodation as the one described in the report. It would have been in effect the same road. And the language of the court would be as much in point, when they say : " In the present case it does not appear that the road as laid out is not substantially a direct and convenient means of communication between the termini described in the petition, and no fraud is shown; we must, therefore, take the judgment of the commissioners as conclusive as to the necessity." To lay out " a direct and convenient means of communication between the termini " does not make it necessary

that both or either of "the stakes and stones" specified in the petition as termini shall fall within the way as described in the judgment laying it out.　Upon a petition for a way between two definite points selectmen have authority to lay out a direct and convenient way for the accommodation of public travel between those points.　If the court "in its discretion may accept the report of a committee, so far as it lays out a part of a highway, and reject it for the residue" (*Peirce* v. *Somersworth*, 10 N. H. 369, 372), it would seem that selectmen may lay out a part of the way prayed for, and deny the petition for the residue.　The public necessity may require such a judgment, and no sufficient reason is suggested why it cannot be rendered.

In *Ford* v. *Danbury*, 44 N. H. 388, 391, it is said: "The only distinctive marks of a highway as petitioned for are its termini. If two petitions were presented to the selectmen at the same time, both commencing at the same monument and running in the same general direction, but one stops at a monument one mile from the starting point, and the other continues to another monument a mile beyond, the petitions could not be said to be for the same highway.　The surface of the ground might be such, and other circumstances connected with the routes, that though both were to go in the same general direction, yet the one would need to go upon ground entirely different from the other for the first mile."　The test here suggested is the one applied in determining the corner bounds between two farms, when exact mathematical measurements are necessary; but the reason for such exactness in determining the location of boundaries does not apply in the laying out of highways.　The question whether the supposed routes are, or are not, the same for the purposes of a highway does not depend alone upon the distance between them, but principally upon their identity in affording means of convenient communication between the localities indicated by the termini of the petition.　In a thickly settled community a wide divergence of the proposed routes, or the laying out of a small part of the way desired instead of the whole, may show that the localities to be benefited were not the same, that each route would accommodate a different line of travel, and that their termini were in fact different.　On the other hand, in a wilderness such differences in the location of ways might be quite unimportant; the public accommodation might be the same.　Other considerations might have a legitimate bearing upon the question of the identity of the ways.　Consequently, it cannot be held that the jurisdiction of selectmen in laying out a highway is limited by arbitrary bounds, which conveniently indicate the public purpose of the way without attempting to fix the actual points of its beginning and ending.　But it is said that if the exact termini of the petition are not regarded as jurisdic-

tional bounds of the way that may be laid out, a looseness of practice will be introduced authorizing the laying out of a way not contemplated in the petition. This argument involves a contradiction. The petitioners seek the best way for public travel from one point to another; the selectmen, governed by the same purpose, lay out a way which best subserves the public necessity for travel between the indicated points. The question presented by the petition for judicial solution is the question determined by the judgment laying out the way. The exercise of this authority does not justify the laying out of a way entirely foreign to the purpose of the petition, but such a way only as is described by a reasonable construction of the petitioners' language.

If *Cole* v. *Canaan*, 29 N. H. 88, *Clement* v. *Burns*, 43 N. H. 609, and *Flanders* v. *Colebrook*, 51 N. H. 300, are in conflict with this result, they are overruled. It might appear from a full report of all the facts and circumstances that those decisions were correct, not on a narrow doctrine of termini, but on the ground of reasonable public necessity and convenience. As it does not appear that the selectmen exceeded their jurisdiction in laying out a part of the way prayed for, the judgment they rendered cannot be attacked in this collateral proceeding. The case discloses no fact indicating that the way they laid out, " when properly understood according to its legal construction and intendment " (*Raymond* v. *Griffin, supra*), was not the way prayed for, or that the statement in the selectmen's return was not true, that they laid out " a new highway as requested in said petition."

2. As the way in question has not been used twenty years for public travel, the plaintiff cannot recover without showing a defect in it at a point where a highway has been laid out in the mode prescribed by statute. P. S., c. 67, s. 1; *Tilton* v. *Pittsfield*, 58 N. H. 327. The recorded return of the selectmen lays out a highway between two termini, a stake at the watering-trough and a stake in the old road. From the first terminus it runs " in a southerly direction 120 rods over land of Charles Spaulding ; thence south over land of A. P. French's heirs 45 rods " to the second terminus. It is claimed that this description of the way is void for uncertainty, because " southerly " may be southeast or southwest, or any direction between those points. But that result does not necessarily follow. The beginning and ending of the way laid out are established by definite bounds, and the fact that a definite intermediate bound is wanting may not be the cause of insuperable difficulty. The lines of the Spaulding and French lands are also bounds which in connection with the termini may be sufficient to remove any reasonable doubt of the location of the way described in the return. The case does not furnish sufficient facts for a determination of this question.

3. The judgment lays out a way on one, or at most two, lines, while the survey of the road as constructed shows that it has several courses. It follows that in many places the road as built is not the road that was laid out. The construction of the road on courses different from those specified in the return does not change the legal effect and meaning of the return, or make all parts of the road fall within the legal limits of the highway. The defect complained of may not have been in the highway that was laid out, and in that event the town would not be liable.

*Case discharged.*

Smith, J., did not sit; Blodgett and Chase, JJ., dissented: the others concurred.