Hillsborough
No. 83-144

FRANCIS CAOUETTE & a.

v.

TOWN OF NEW IPSWICH

FRANCIS CAOUETTE

v.

TOWN OF NEW IPSWICH

RAYMOND SOLOMONOFF

v.

FRANCIS CAOUETTE & a.

October 5, 1984

548

*Runyon & Sweeney P.A.*, of Peterborough (*Walter H. Sweeney* on the brief and orally), for Francis Caouette.

*Tower, Bean & Crocker P.A.*, of Jaffrey (*Jeffrey R. Crocker* on the brief and orally), for the Town of New Ipswich.

*Robert G. Senn*, of Nashua, by brief and orally, for Raymond J. Solomonoff.

PER CURIAM. This is an appeal of three consolidated cases. In the case numbered E-81-488 below (hereinafter "Case 1"), Francis Caouette appeals the superior court's ruling that its direct review of a decision of the selectmen of New Ipswich about location on the layout of a class VI highway must be limited to issues of fraud or gross mistake. In E-82-187 ("Case 2"), Caouette appeals the superior court's dismissal on grounds of collateral estoppel of his petition for declaratory judgment and injunctive relief brought against the Town of New Ipswich to determine that certain roads had never legally been discontinued. In E-82-315 ("Case 3"), Caouette appeals from an order of the superior court favorable to the plaintiff in a suit by Raymond Solomonoff to enjoin trespass to land. The consolidated cases were tried before a Master (*James D. O'Neill*, Esq.), whose report and recommendations were adopted by the Superior Court (*Bean*, J.). We reverse and remand Case 1 and affirm Cases 2 and 3.

In December 1978 Francis Caouette and Jeffrey Gray took title to a tract of land in New Ipswich. The description of the tract in their deed made no mention of any roads. There is no question, however, that the tract conveyed is bordered on the east by Old Peterborough Road, on the south by Old Rindge Road, and on the north and west by land of Raymond Solomonoff. Virginia and Raymond Allard own land to the south of Old Rindge Road, and their deed purported to convey to them the entire width of Old Rindge Road opposite the Caouette and Gray tract.

The deed to Caouette and Gray reserved from its conveyance "any rights of way if any such exist," but it did not purport to convey any right of way to them. The respective deeds to Solomonoff and to the Allards excepted from their conveyances any rights of way of the public or others. None of the deeds expressly created or granted any right of way to the Caouette and Gray tract.

In 1844, the Town of New Ipswich voted to discontinue the two old roads mentioned, and for many years before the time in question there had been no vehicular traffic over them. In 1920 the State blocked the intersection of Old Rindge Road with state route 123–124, and thereafter anyone passing from the state road to Old

Rindge Road had to cross the land owned during this litigation by Solomonoff. Solomonoff in fact constructed a driveway from the state road over a corner of his land and over a portion of Old Rindge Road which he claimed as his own land, westerly of the portion of it that the Allards claimed as theirs. Solomonoff used his driveway to reach his own house. The driveway and stretches of Old Rindge and Old Peterborough Roads formed segments of the Wapack Trail for hikers, who had traveled the trail on foot over the years.

At the time of the conveyance to them, Caouette and Gray knew that without the use of Old Rindge or Old Peterborough Roads, or some other right of way, there could be no access by land to their tract. Accordingly, more than two weeks before taking title, Caouette and Gray obtained a license from Solomonoff to use his driveway as access to their tract for one year. Before the year was out, Solomonoff advised them that he would not renew the license. Without access, the tract was useless as a site for the logging and lumber milling that Caouette and Gray desired to do, or for any other purpose.

The three cases here on appeal are parts of a complicated series of legal proceedings, either brought by Caouette and Gray to obtain access to the tract or brought against them to contest their assertions of rights of access. Since the appeal in Case 2 involves the effect under the doctrine of collateral estoppel of a prior judgment in two other consolidated cases heard before a different master (Cases A and B), it is necessary to consider these other cases even though they are not under appeal.

The prelude of this current litigation occurred in June 1980, when counsel for Caouette and Gray asked the town clerk of New Ipswich about the legal status of the two old roadways. In July 1980, and before either Caouette or Gray had received any response from the clerk, Caouette applied to the town planning board for a permit to build a three-room house on the tract. The board denied the permit, and in August 1980, Caouette's attorney asked for its reasons. In September, the chairman of the planning board explained that "the road" had been discontinued and that Caouette and Gray had no proof of a right of access to the tract. In further communications the town clarified its position that both Old Rindge Road and Old Peterborough Road had been discontinued by vote of the town in 1844.

In October 1980, counsel for Caouette and Gray began Case 1 by petitioning the selectmen of New Ipswich to lay out a highway over the route of Old Rindge Road, to give them access to their tract. They brought the petition under RSA 234:18-a (now RSA 231:22) (*cf.* RSA 231:40), which required the selectmen to lay out a highway

subject to gates and bars over the course of a discontinued roadway, if the petitioner had no other public access to his land and if no one objected. The petition thus implied that Caouette and Gray accepted the town's position that the roads had been discontinued.

Before the selectmen had acted on the petition, in December 1980 the Allards brought a civil trespass action against Caouette and Gray alleging that they had trespassed on the portion of Old Rindge Road lying south of the Caouette and Gray tract and claimed by the Allards as theirs. Thus began Case A.

In February 1981, the selectmen had not yet acted on the petition for layout in Case 1. In correspondence with counsel for the selectmen, counsel for Caouette and Gray stated that they reserved the option to demonstrate that the town had never legally discontinued the old roads.

When the selectmen did act on the petition, a written objection to the petition was filed, with the legal effect of converting it into one for the layout of a new highway under RSA 234:1 (now RSA 231:8). In July 1981, the selectmen responded to the petition by laying out a road over Chapman and Old Peterborough Roads. The portion of the layout over Old Peterborough Road followed a right of way offered to the town for that purpose by Solomonoff, as less intrusive on his privacy than the route proposed by Caouette and Gray.

Caouette and Gray then began Case B, a quiet title action against the Allards and Solomonoff. Caouette and Gray claimed a right to use Old Rindge and Old Peterborough Roads, and claimed access to State route 123–124, basing their claims on the deeds of the parties and on public prescription. After beginning Case B, in August 1981 Caouette and Gray appealed the selectmen's layout in Case 1 to the superior court under RSA 234:24 (now 231:34). At that point, Cases 1, A and B were all pending in the superior court.

In September 1981, a superior court master heard the combined Cases A and B: the Allards' trespass action against Caouette and Gray, and Caouette's and Gray's action against the Allards and Solomonoff to quiet title. At the joint trial, Caouette and Gray again appeared to accept the position that the town had discontinued Old Rindge and Old Peterborough Roads. They asked the master to find the discontinuance as a fact and to predicate certain title determinations on the discontinuance. While we have been supplied only with fragments of the record in Cases A and B, it is apparent from the master's report that some evidence was presented on the issue of the discontinuance of the roads.

In December 1981, the master filed his report in Cases A and B. He found that "Old Rindge Road was discontinued by vote of the town in 1844," a "fact . . . not contested by the parties in either

action." While the master found that the parties had "little concern" for the status of Old Peterborough Road, he noted there was evidence of its discontinuance, and concluded that it too had been "effectively closed in 1844."

He went on to find no use by the public over any of the land except for hikers' use of the Wapack Trail. He concluded Caouette and Gray could claim no rights by prescription. He ruled that the Allards owned only the southerly half of Old Rindge Road, but that Caouette and Gray had trespassed on the Allards' half of that road by cutting trees. In January 1982, the superior court approved the master's report. None of the parties appealed the decree.

At this point, then, Cases A and B were over, and Case 1 was still pending in the superior court. Some three months later, Caouette alone brought Case 2, the petition to declare that the town had not legally discontinued the old roadways in 1844. He claimed that under the law in effect in 1844 the town's vote to discontinue the roads had been legally insufficient for failure to gain the approval of the Court of Common Pleas. The town did not claim it had obtained court approval, but denied that such had been necessary. Caouette's claim appeared to be inconsistent with the position he had assumed in Cases A and B, and with the master's findings in those cases.

The third of the actions now on appeal began in June 1982 when Solomonoff brought Case 3, a suit to enjoin Caouette and Gray from committing trespass.

By agreement, the Superior Court (*DiClerico*, J.) entered a temporary order enjoining Caouette and Gray from committing or causing trespass on Solomonoff's land. The case was later expanded by a claim that Caouette had violated that order. Thereafter, at Caouette's request, the superior court consolidated Cases 1, 2 and 3 for trial. We will give a detailed description of the superior court's action in these cases as we set out Caouette's specific claims of error, to which we now turn.

In Case 1 he claims that on appeal from the decision of the selectmen, he and Gray were entitled to a de novo determination by the superior court of the most desirable location of the highway to be laid out. They sought the opportunity to persuade the superior court that the route of Old Rindge Road would be a better place for the new highway than Chapman and Old Peterborough Roads, which the selectmen had chosen. The master ruled against them, and limited his review to claims of fraud and gross mistake by the selectmen. Finding none, he recommended that the superior court affirm the selectmen's layout over Chapman and Old Peterborough Roads.

To review the master's position, we must first identify the issue which Caouette and Gray sought to litigate in their appeal to the superior court. Two issues were possible, since a petition under RSA 231:8 can require the selectmen to determine whether there is "occasion" for laying out the road, *id.*, and to determine the damages that should be assessed to compensate a landowner whose property is taken for the road in accordance with any layout. RSA 231:15.

■■■ The appeal to the superior court raised no issue of damages. It was entirely concerned with the issue of "occasion." By "occasion" the law means the public need for the road. *See Spaulding v. Groton*, 68 N.H. 77, 44 A. 88 (1894). Public need, of course, means public need at the place where the petitioners request the road. While statutory law provides that on petition the selectmen may lay out a road "over any ground they deem most suitable," RSA 231:12, their discretion in the matter of location is limited by the jurisdictional requirement that the highway as laid out must be "such a way only as is described by a reasonable construction of the petitioners' language." *Spaulding v. Groton, supra* at 84, 44 A. at 91.

On the issue of "occasion," Caouette and Gray made no claim that the selectmen's choice of location deviated so far from the request as to raise any jurisdictional issue. Nor did they claim that the selectmen committed any fraud or gross mistake in exercising their discretion over location. They simply argued, in the words of Caouette's brief, that the selectmen's choice was "neither . . . the best location nor in conformity with the public interest standard." Consequently, Caouette and Gray claimed a right to try to persuade the superior court master to locate the roadway where they prefer to have it. They thus raised the issue of the scope of the superior court's jurisdiction to review the selectmen's exercise of discretion, in deciding that there was "occasion" to lay out a road by a certain route.

■■■ This issue was resolved in *V.S.H. Realty, Inc. v. City of Manchester*, 123 N.H. 505, 506–07, 464 A.2d 1111, 1112 (1983). In *V.S.H. Realty, Inc.*, we concluded that under RSA chapter 231, the scope of a judicial hearing on the issue of occasion is de novo. *Id.* at 508, 464 A.2d at 1112. We recently reaffirmed that holding in *Merrill v. City of Manchester*, 124 N.H. 8, 466 A.2d 923 (1983), when we reiterated that the scope of review "on *any* appeal from a municipal taking of property for a highway under RSA chapter 231 is de novo." *Id.* at 14, 466 A.2d at 927 (emphasis added). Accordingly, we conclude that the superior court erred in ruling that its review under RSA chapter 231 was limited to issues of fraud or gross mistake and remand for a new trial consistent with this opinion.

In Case 2 Caouette argues that the master erred in concluding that the doctrine of collateral estoppel required the dismissal of his declaratory judgment action against the town. Though the parties have not provided us with the pleadings in Case 2, or with any transcript, it appears from the master's report that Caouette claims that the vote of the town in 1844 was legally insufficient to discontinue the roads, with the result that he is entitled to exercise a public right of way over them. He rests his claim of insufficiency, in turn, on the allegation that the town failed to secure the approval of the Court of Common Pleas to the discontinuance, as R.S. 54:2 then required when the highway had not originally been laid out by town selectmen and in certain other cases.

In response to the town's motion to dismiss based on collateral estoppel, the master found that in Cases A and B Caouette and Gray had litigated the issue of the discontinuance of the two old roads. He therefore applied the doctrine of collateral estoppel to preclude relitigation of the same issue. Since he found that in Cases A and B the court had ruled that the roads had been discontinued, he concluded that Caouette was not entitled to a favorable judgment on his new claim that the roads had not been discontinued. The master therefore dismissed the petition for declaratory judgment.

█ To determine whether the master was correct, we must begin with a consideration of the relevant aspects of the rule of collateral estoppel. The rule is derived from its parent doctrine of *res judicata*, which precludes the litigation in a later case of matters actually litigated, and matters that could have been litigated, in an earlier action between the same parties for the same cause of action. *Scheele v. Village District*, 122 N.H. 1015, 1019, 453 A.2d 1281, 1283 (1982).

█ The doctrine of collateral estoppel differs from *res judicata* in a number of respects, not all of them of concern in this appeal. Here it is enough to mention two points of distinction. First, collateral estoppel may be invoked, as it was here, by a party to a later case who was not a party or in privity with a party to the earlier case. *Sanderson v. Balfour*, 109 N.H. 213, 247 A.2d 185 (1968).

█ Second, the preclusive effect of collateral estoppel extends only to matters that were actually litigated in the earlier case. *Bricker v. Crane*, 118 N.H. 249, 387 A.2d 321 (1978). This aspect of the modern rule distinguishes it from older formulations. Cf. *Ainsworth v. Claremont*, 108 N.H. 55, 226 A.2d 867 (1967); *Metcalf v. Gilmore*, 63 N.H. 174 (1884). It is an open question whether this court should carry the reformulation of the rule so far as to adopt all

elements of the position taken by the Restatement (Second) of Judgments §§ 27 to 29 (1982). This appeal does not, however, present an occasion to answer that broad question, for Caouette raises only two specific claims of error.

Before turning to those two claims, it is well to note one unusual feature of this case, to avoid confusion. Collateral estoppel is often spoken of as precluding the relitigation of an issue by a party who lost on that issue in the earlier case, *e.g.*, *Bricker v. Crane supra*, and normally it is in just these circumstances that the rule will be applied. In the case before us, however, Caouette and Gray did not lose on the issue of discontinuance in Cases A and B. They did not claim there that the roads had not been discontinued. As we will see below, the record indicates that by the conclusion of Cases A and B they claimed the contrary, that the roads had been discontinued.

■ Caouette does not argue, however, that this fact stands in the way of applying the doctrine, and we agree that it should not. The policy behind *res judicata* and collateral estoppel is a policy against needless relitigation. *Scheele v. Village District*, 122 N.H. at 1019, 453 A.2d at 1283. Even where a party has won on an issue in an earlier case, then, it is consistent with this general policy to estop him from relitigating the issue to reach an inconsistent result. *See* RESTATEMENT (SECOND) OF JUDGMENTS *supra*. Perhaps it is superfluous to add that we express no opinion about the reason for Caouette's and Gray's position in Cases A and B.

■ With this, we turn to Caouette's two specific claims of error in applying the rule of collateral estoppel against him. First, he claims that the rule does not apply to issues of law, and he regards the issue of discontinuance as one of law. This position suffers from a confusion of terminology. It would be proper to speak of the ultimate conclusion of effective discontinuance as a conclusion of law in the sense that it would be a proper subject of a request for a ruling of law. Such a conclusion is not, however, purely legal. It is a conclusion resulting from both legal and factual premises. Such a conclusion is a common subject of collateral estoppel, *see, e.g., Bricker v. Crane supra* (trustees were justified in taking certain action), and may be so here. *See also* RESTATEMENT (SECOND) OF JUDGMENTS §§ 27 to 29 for application of collateral estoppel to pure issues of law.

Second, Caouette argues that the master erred in concluding that the question of discontinuance was actually litigated in the prior action. He thus raises an issue that is hard to resolve. The inherent difficulty of choosing the place to draw a line between what does or does not constitute litigation for purposes of the rule is compounded

in this case by the fragmentary character of the records of Cases A and B and by the lack of a transcript in Case 2. But this case must be decided, and we will start by summarizing the relevant portions of what we do know about its predecessors.

The master in Cases A and B found that the discontinuance of Old Rindge Road was "not contested" and that "little concern" was expressed over the discontinuance of Old Peterborough Road. Though there was no formal agreement or stipulation on the issue, counsel for Solomonoff and for Caouette appear to agree that prior to the trial of Cases A and B the parties agreed that the town had voted in 1844 for the purpose of discontinuing the roads.

Counsel for Caouette maintains, however, that there was no agreement that the 1844 vote was legally sufficient to do what it purported to do. This position is consistent with the master's note that evidence was entered on the subject of the discontinuance. Though he did not explain what that evidence was, it would have been pointless unless it had been directed to the question of the sufficiency of the 1844 vote to discontinue the roads. We may infer that the evidence related to both roads, since Caouette's and Gray's replication in Case B did not deny the Allards' answer, alleging that one vote on one warrant article in 1844 had effected the discontinuance.

By the time the parties filed their requests for findings and rulings, the Allards claimed that Caouette and Gray did not dispute that the discontinuance had been "proper and legal," and they asked the master to find that as a fact. There is no record that the master granted this request. He did, however, grant requests from Caouette and Gray that indicate that by the time they filed their requests they had taken the position that the vote had been legally sufficient to close the roads.

The master granted Caouette's and Gray's request that he find as a "fact" that the roads "were discontinued by vote of the town in 1844." More significantly, Caouette and Gray also asked for rulings of law based upon "the discontinuance in 1844." Specifically, they asked the master to find that the Allards could claim a fee interest in a portion of Old Rindge Road "by virtue" of the 1844 discontinuance. This request was actually adverse to the Allards, who claimed the entire width of a stretch of the road. The master granted this request. We do not know specifically when Caouette and Gray may have arrived at the position reflected in these requests. It would, however, be speculation for us to conclude that they had done so before the close of the evidence, since that is the time when requests for findings and rulings are due under Superior Court Rule 72.

We summarize by saying that the record indicates that by the opening of evidence in Cases A and B the parties agreed that the

town had voted in 1844 for the purpose of discontinuing the roads. Evidence was entered bearing on the issue of discontinuance. By the close of the evidence Caouette and Gray did not dispute that the votes had been legally effective to discontinue the roads. Caouette and Gray sought and obtained a ruling about fee title predicated on the effective discontinuance of Old Rindge Road.

On this record of mixed agreement and contention, we find no error in the master's conclusion that there was actual litigation of the question of the legal efficacy of the 1844 vote to discontinue. This record is consistent with findings that there was no agreement about an issue on which evidence was taken; that one party formally asked for the resolution of that issue as the basis for an adverse ruling against an opposing party; that the issue was resolved as requested and the adverse ruling entered. It was therefore open to the master to apply the general rule adopted by the Restatement (Second) of Judgments § 27, comment d, that an issue is actually litigated when it is "properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." Conversely, the record does not indicate that the master ran afoul of the Restatement's further comment that an issue is not actually litigated "if it is raised in an allegation by one party and is admitted by the other *before* evidence on the issue is adduced at trial." *Id.*, comment e (emphasis added). Therefore, the record does not support the argument that the master erred in applying collateral estoppel in Case 2.

Before concluding our consideration of Case 2, we caution that we do not hold today that in every case we would hew to the line as the Restatement draws it between what is and is not actually litigated. But we could not adopt a concept of actual litigation that was narrower than the Restatement position.

We should also observe that collateral estoppel may not have been the only basis for dismissal. It is, however, the only basis raised before the master and this court.

As his final issue, in Case 3 Caouette claims that the master failed to make any finding of fact that he had committed trespass to the Solomonoff land after the effective date of the temporary order enjoining such trespass. Caouette therefore argues that the master erred when he recommended that Caouette be enjoined from further trespass and be ordered to appear to show cause why he should not be held in contempt of the court's prior orders in Cases A and 3.

On the record before us, there is no indication that the court issued any order in Case A. We therefore assume that the temporary order in Case 3 is the only one that he could have violated. On this

assumption, he is wrong in asserting that the record is inadequate to support an injunction against further trespass or a show cause order for contempt.

We agree that the master made no clear and express finding that Caouette had committed particular acts of trespass. In his narrative report he simply noted "considerable testimony" that Caouette and Gray had ignored the decrees in Cases A and 3 and the property rights of others.

Nor did he make any clear finding by reference. Solomonoff had requested a finding that "on January 27, 1982, on March 10, 1982 and at other times subsequent to those dates, without license, privilege or permission of the plaintiff to do so, [Caouette] did travel upon the driveway portion of the plaintiff's . . . property." The master did not rule on this request. He wrote that he granted those requests that were "consistent" with his narrative opinion, but that is a doubtful basis for concluding that he thereby granted Solomonoff's specific request.

■ Caouette is not entitled to complain about these defects, however, because the record does not indicate that he ever asked for specific findings on the issue of trespass in Case 3. In the absence of a party's requests for findings, a master or judge is generally under no obligation to that party to provide them. *See Appeal of Steele Hill Development, Inc.,* 121 N.H. 881, 435 A.2d 1129 (1981); *cf.* RSA 491:15, 519:11. *See also* SUPER CT. R. 72.

■ The master's recommendation of an injunction and a show cause order against Caouette implies that he found acts of trespass as alleged. In the absence of a request for findings by Caouette, he had no obligation to Caouette to be more explicit, and his recommendation is not defective for lack of foundation. Accordingly, we affirm the present judgment in Case 3.

> *Reversed and remanded in*
> *Case 1; affirmed in*
> *Cases 2 and 3.*