**In re DEIN HOST, INC.**

v.

**Joseph D. PIGNATO.**

**No. C–88–104–L.**

United States District Court,
D. New Hampshire.

May 19, 1988.

Sheehan, Phinney, Bass & Green by Peter F. Kearns, Portsmouth, N.H., for Dein Host, Inc.

Shaines & McEachern by R. Timothy Phoenix, Portsmouth, N.H., for Joseph D. Pignato.

## ORDER ON APPEAL FROM BANKRUPTCY COURT

LOUGHLIN, District Judge.

This is an appeal from a final judgment of the U.S. Bankruptcy Court for the District of New Hampshire pursuant to 28 U.S.C. § 158(a). The appellant, Dein Host, Inc., [hereinafter appellant] seeks review of the Bankruptcy Court's decision applying the doctrine of collateral estoppel to bar relitigation of issues decided by the Appeals Tribunal of the New Hampshire Department of Employment Security [hereinafter DES].

## FACTS

From a period commencing in 1977 until sometime in March of 1984, appellee, Joseph Pignato, was the sole shareholder and principal of a realty trust which owned and operated Joseph's Rye on the Rocks Restaurant in Rye Beach, New Hampshire. In March of 1984, a business deal was arranged whereby a new real estate corporation, Dein Host, Inc., was formed. Pursuant to the agreement, Pignato acquired forty-nine percent of the stock of Dein Host, Inc., Marsha Jespersen also acquired forty-nine percent and served as president of the corporation and the remaining two percent was acquired by the companies' accountant.

As part of the consideration of the sale of an interest in the corporation to Jespersen, Pignato entered into a three year contract to retain his position as manager of the restaurant. Paragraph 14 of the employment contract provided that the corporation could discharge Pignato at any time for cause, including, but not limited to, misconduct.

On January 16, 1985, Pignato's employment with the restaurant was terminated by appellant. The reasons cited for such termination were, *inter alia*, failure to show up for work as scheduled and intoxication on the job. Thereafter, Pignato filed for unemployment compensation benefits with the DES. Benefits were denied, however, without a hearing, based upon statements to the DES by appellant's representative; namely, Marsha Jespersen and Marshall Jespersen. Pignato appealed the decision to the Appeals Tribunal pursuant to N.H.Rev.Stat.Ann. Ch. (R.S.A.) 282–A:48, and a hearing was ultimately scheduled for June 17, 1985. Pignato appeared and presented evidence at the hearing before the DES Appeals Tribunal. Appellant, however, failed to appear. The Appeals Tribunal found that Pignato had not been discharged for misconduct, had not been intoxicated on the job and had not failed to appear for work. Furthermore, the tribunal noted that appellant was duly notified of the date, time and place of the Appeals Tribunal hearing but failed to attend. Unemployment benefits were granted to Pignato.

By letter dated June 25, 1985, Marshall Jespersen requested reopening of the Ap-

peals Tribunal decision. On July 11, 1985, the DES Deputy Commissioner advised both parties that the entire record in the matter had been examined, and there was no basis for reopening on any of the grounds permitted by the statute: fraud, mistake or newly discovered evidence. *See* R.S.A. § 282–A:60.

Appellant appealed to the DES Appellate Division contending that the notice of appeal was received on the afternoon of the 17th of June, the appeal being heard at 9:00 a.m. that morning. Marshall Jespersen had telephoned the Appeals Tribunal Chairman on the afternoon of June 17, 1985 to inform him of the lack of notice. The Appellate Division, however, sustained the decision of the Appeals Tribunal holding that the rights of the appellant were not prejudiced and the findings of the Appeals Tribunal did not result in any one of the factors listed in R.S.A. § 282–A:65. Appellant filed a motion for reconsideration, which was denied on October 28, 1985.

Thereafter, appellant appealed to the New Hampshire Supreme Court pursuant to R.S.A. § 282–A:67 and N.H.Admn.R. Emp. A203, 12. Such appeal, however, was found by the Court to be untimely and, therefore, denied. Thus, the decision of the DES that Pignato was not intoxicated on the job and did not fail to show up for work as scheduled became a final judgment.

Subsequently, Pignato brought suit in Rockingham County Superior Court against appellant, and the Jespersens, individually, alleging breach of employment contract.

Voluntary proceedings were commenced against appellant on August 15, 1986. Therefore, all proceedings against appellant were stayed pursuant to 11 U.S.C. § 362(a). Pignato filed a proof of claim in the bankruptcy court seeking relief on the same grounds as in the Rockingham County Superior Court.

In the action against appellant in the U.S. Bankruptcy Court, Pignato moved for summary judgment relying on the doctrines of *res judicata* and collateral estoppel, arguing that any defense to his wrong-

ful termination action was barred by the DES determination that he has not engaged in misconduct. After the submission of legal memoranda and oral argument on January 26, 1988 before the bankruptcy court, Yacos, J. held that the doctrine of *res judicata* did not apply, as the claim before the DES was different than the wrongful termination action before the court. The court did, however, grant partial summary judgment, finding that the doctrine of collateral estoppel did apply and that Dein Host would be prohibited from introducing any evidence as to the two issues which the court found, as a matter of law, had been actually litigated before the DES: (1) Whether or not Pignato had been intoxicated on the job; and (2) whether or not Pignato had, on several occasions, failed to show up for work.

Trial ensued on that basis and the court held that appellant had breached its employment contract with Pignato. This appeal follows:

## STANDARD OF REVIEW ON APPEAL

On appeal from the bankruptcy court, "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Rule 8013, Federal Rules of Bankruptcy Procedure.

The bankruptcy court's conclusions of law, however, are not presumptively binding on appeal. Indeed, this Court "... must independently determine the correctness of the ultimate legal conclusion adopted by the bankruptcy judge on the basis of the facts found." *Borg–Warner Acceptance Corp. v. Fedders Financial Corp.* (In re Hammons), 614 F.2d 399, 403 (5th Cir.1980); *see In re Cricker*, 46 B.R. 229, 231 (N.D.Ind.1985). The Bankruptcy Court's conclusions of law are therefore subject to a *de novo*, rather than clearly erroneous, standard of review. *See In re Mor–Ben Ins. Markets Corp.*, 73 B.R. 644 (9th Cir.1987) (conclusions of law are reviewable *de novo* ).

## DISCUSSION

The applicability of the doctrine of collateral estoppel is premised on the fact that the judgment in the former action was rendered by a court of competent jurisdiction. More aptly stated by the New Hampshire Supreme Court in *State v. Corron*, 73 N.H. 434 (1905):

> The validity of a judgment as a bar or estoppel depends primarily upon the organization and character of the tribunal from which it professes to emanate. And it is first of all requisite that the judgment should have been rendered by a legally constituted court,—one known to and recognized by the law.

Thus, it must be determined whether the DES, in rendering decisions on unemployment benefits, is a court of competent jurisdiction such that its decisions may be given collateral estoppel effect.

In *State v. Corron, supra*, the state board of license commissioners after reasonable notice and a hearing revoked defendant's liquor license. The State then brought a subsequent civil action for Debt, on a bond. At issue was the effect such revocation would have on a subsequent civil action. Defendant argued that res judicata was inapplicable since the license commissioners do not constitute an "ordinary public court of justice." The court, however, after analyzing the applicable statute conferring authority upon the commissioner to revoke licenses, held that the proceedings of the commission were designed to be normally of a judicial character.

> Before any license is revoked or cancelled, the holder shall be entitled to a hearing by said board and to five days previous notice thereof in writing, except that licenses of the first class may be revoked at any time, by said board, with or without notice, in their discretion. (s. 14). The section itself recognizes two methods of exercising the power, one judicial because of notice and hearing the other administrative. The two methods must be construed in the light of existing law. They differ in that in the first the licensee is entitled to notice and hearing—to an opportunity to be heard and present evidence upon the question litigated. In the present case the action of the commissioners is not attacked in any way. Although they had power to dispose of Corron's right to a first-class license by an exercise of administrative power, there is no suggestion that they did so. He had notice, was heard, and litigated before a competent tribunal the matter in issue, and the same results must follow the judicial action in which he took part as ordinarily attend an adjudication of which the parties have notice and in the course of which they are heard. In short, the cancellation of Corron's license was a judicial act, and the commissioners had jurisdiction of the parties to and the subject-matter of the suit.

*Id.*

Similarly, in this case the New Hampshire Unemployment Compensation Statute, R.S.A. § 282–A explicitly empowers the Commissioner of DES to take action of a kind which finally determined the legal rights of an unemployed individual. R.S.A. § 282–A:32 I(b) permits the commissioner to determine whether an employee was discharged for misconduct connected with his work. R.S.A. § 282–A:34 provides for disqualification of an individual who has been discharged for intoxication.

More importantly, the statute provides parties with a right to a hearing if dissatisfied with the initial determination of the DES certifying officer. R.S.A. § 282–A:55 provides for an impartial Appeals Tribunal appointed by the commissioner. R.S.A. § 282–A:56 pertains to the procedure of hearings before the Appeals Tribunal.

> A hearing shall be conducted in such a manner as to ensure a fair and impartial hearing to the interested parties. The appeal tribunal shall hear the appeal de novo and shall not be bound by prior findings or determinations of the department of employment security although the records of said department shall be part of the evidence to be considered by the tribunal. An appeal shall be filed and presented and the hearing conducted in accordance with rules adopted by the

commissioner. Such rules need not conform to common law or statutory rules of evidence or other technical rules or procedure. The place and time of a hearing shall be determined by the commissioner. In no case shall a hearing proceed unless the chairman is present.

*Id.* The statute goes on to provide for postponement, R.S.A. § 282–A:59; reopening, R.S.A. § 282–A:60; an appeal to the Appellate Division, R.S.A. § 282–A:62–66; and finally for judicial review by the Supreme Court, R.S.A. § 282–A:67.

■ In enacting R.S.A. § 282–A, therefore, the legislature clearly gave the DES general authority to adjudicate claims involving unemployment compensation benefits. Notice and opportunity to be heard, *inter alia,* are procedural safeguards inherent within such authority. This court opines that a decision rendered pursuant to the New Hampshire Unemployment Compensation Statute, R.S.A. § 282–A, is judicial in character and collateral estoppel can be applied. *See International Harvester Co. v. Occupational Safety & Health Review Comm'n,* 628 F.2d 982, 984 (7th Cir. 1980). The court must now determine whether collateral estoppel applies to the facts of this case. In making the determination, this court "must independently determine the correctness of the ultimate legal conclusion adopted by the bankruptcy judge on the basis of the facts found." *Borg–Warner Acceptance Corp.,* 614 F.2d at 403.

Collateral estoppel, also known as issue preclusion, dictates that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or different claims." Restatement (Second) of Judgments 27, at 250. Recently, the First Circuit outlined five essential elements which must be present for the successful application of issue preclusion:

1. the determination (in this case a legal determination as to the existence of a contract) must be over an issue which was actually litigated in the first forum; 2. that determination must result in a valid and final judgment; 3. the determination must be essential to the judgment which is rendered by, and in, the first forum; 4. the issue before the second forum must be the same as the one in the first forum; and 5. the parties in the second action must be the same as those in the first.

Of the five elements which have been identified as essential to issue preclusion, it is the first element—the issue must be actually litigated—that appellant claims is not satisfied. Appellant argues that the Appeals Tribunal decision was essentially a default judgment. Thus, where a default judgment is entered the issues decided are not actually litigated for the purpose of collateral estoppel. Appellant relies on Restatement (Second) of Judgments, § 27, comment e (1982) which states in part that "[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated."

The bankruptcy judge, however, refused to apply the Restatement's inexorable rule with regard to default judgments. Although agreeing with appellant that the court was presented with "essentially a default situation", Tr., p. 38, the judge correctly recognized that the New Hampshire Supreme Court has yet to adopt "all elements of the position taken by the Restatement (Second) of Judgments §§ 27 to 29 (1982)." *Caouette v. Town of New Ipswich,* 125 N.H. 547, 554–55, 484 A.2d 1106 (1984). Instead the bankruptcy judge opined that the application of the doctrine to default judgments should be determined on a case by case basis. *See* Tr. p. 53. Thus, the bankruptcy judge concluded:

[L]ooking at this specific case, it seems to me that an employee charged with drinking on the job and failing to show up for work is entitled to have a quick resolution of that in a contest with his employer before the DES, and that if the employer, without just cause, fails to appear and a judgment is entered on the employee's testimony only, which is what happened here, I think that collateral es-

toppel should be applied in this particular case.

In *Caouette*, the New Hampshire Supreme Court refused to adopt all elements of the Restatement (Second) of Judgments § 27, simply because that issue was not before it. The court did, however, approve the application by the master of the general rule adopted by Restatement (Second) of Judgments § 27, comment d, "that an issue is actually litigated when it is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." 125 N.H. at 557, 484 A.2d 1106. A further reading of *Caouette* indicates the approval of a portion of comment e:

> Conversely, the record does not indicate that the Master ran afoul of the Restatement's further comment that an issue is not actually litigated if it is raised in an allegation by one party and is admitted by the other before evidence on the issue is adduced at trial. *Id.* at 557, 484 A.2d 1106.

Finally, the court cautions: "[W]e do not hold today that in every case we would hold to the line as the Restatement draws it between what is not actually litigated. *But we could not adopt a concept of actual litigation that was narrower than the Restatement position." Id.* (emphasis added).

A close review of *Caouette*, therefore, suggests that the New Hampshire Supreme Court will accord deference to the Restatement's position as to what does or does not constitute actual litigation with regard to collateral estoppel.

Appellant asseverates that "[a]t the very least, adoption of one of the provisions of comment e to § 27, is a strong indication that the New Hampshire Supreme Court would adopt the rule regarding defaults...." Brief for Appellant, p. 8. Unequivocally, the preponderant view is that a default judgment has no collateral estoppel effect. *See* C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4442 at 375. In fact, in *Commonwealth of Massachusetts v. Hale*, 618 F.2d 143 (1st Cir. 1980), the First Circuit Court of Appeals refused to invoke the doctrine of collateral estoppel where a prior judgment was entered by default. However, support for the bankruptcy judge's refusal to apply the Restatements rule with regard to default is found within comment *e.*

> It is true that it is sometimes difficult to determine whether an issue was actually litigated; *even if it was not litigated, the party's reasons for not litigating in the prior action may be such that preclusion would be appropriate.* But the policy considerations outlined above weigh strongly in favor of no preclusion, and it is in the interest of predictability and simplicity for such a result to obtain uniformly.

*Id.* (emphasis added). The policy considerations for not choosing to litigate, outlined in comment e, are that "[t]he action may involve so small an amount that litigation of the issue may cost more than the value of the lawsuit; or the forum may be an inconvenient one in which to produce the necessary evidence or in which to litigate at all." *Id.*

Thus, the following rule is culled from Restatement (Second) of Judgments § 27, comment *e:* In determining whether default judgments are accorded collateral estoppel effect, the general rule is that issue preclusion is inappropriate if the prior action results in a default judgment. However, the court will not be inflexible in applying the above general rule and may grant preclusory effect to issues determined in a default judgment if it finds that a party's reasons for not litigating are such that the interests of fairness militate against the non-preclusion of issues already raised but not litigated. In applying the above rule to the facts of any given case, the court must be cognizant of the strong presumption in favor of nonpreclusion.

In this case, appellant claims that it had little incentive to litigate the matter before the DES since any benefits received by plaintiff would be charged to its unemployment compensation account and would not constitute an out-of-pocket expense. The appellant's "merit rating" may escalate only after a certain amount of benefits

are charged to its account, thus raising the percentage contribution the employer is required to make. Appellant claims that in such a situation the incentive to litigate is not analogous to that of defending a law suit for several hundred thousand dollars based on breach of an employment contract. Furthermore, appellant's representatives contend that they did not retain counsel for the DES proceedings before the Appeals Tribunal because they did not believe the company had a lot at stake. Also, there are procedural opportunities unavailable in DES proceedings that could be utilized in a subsequent action for wrongful termination and could readily cause a different result. Finally, appellant claims that the application of collateral estoppel to DES proceedings will result in protracted litigation which may have adverse implications.

In his decision, however, the bankruptcy judge opined that the underlying policy of the DES type statute and the actions of an employer in making such allegations override the lack of incentive to litigate claimed by appellant.

> The DES type hearings ... of course they're called something different in each state ... are administrative hearings that are normally not full-blown trials and to some extent the Courts might be reluctant in establishing a rule that would put pressure upon parties to those hearings to go full-blown in a full-scale trial mode on such determinations. On the other hand, the underlying policy of the DES type statute is to prevent employers from making allegations to get out of paying unemployment benefits that might hamper the employee in getting future employment. Certainly nothing is more likely to do that than alleging that an employee is drunk on the job or fails to show up for work. So I think on the facts of this particular case the DES hearing involved rather substantial charges and should not have been taken lightly by any of the parties involved.

Tr., p. 50, 51.

This court is mindful of the bankruptcy court's concerns and the policy underlying the unemployment compensation statute. However, to the extent that the bankruptcy court gave greater weight to policy considerations other than those of appellant in not choosing to litigate, its decision runs afoul of the Restatement (Second) of Judgments § 27 and this court's opinion today. A fair reading of the bankruptcy court's decision makes it ostensible that the court focused primarily on considerations affecting plaintiff. The strong presumption is against applying issue preclusion to default judgments.

> The interests of conserving judicial resources, of maintaining consistency, and of avoiding oppression or harassment of the adverse party are less compelling when the issue on which preclusion is sought has not actually been litigated before. And if preclusive effect were given to issues not litigated, the result might serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation.

Restatement (Second) of Judgments § 27, comment e. This court opines that the reasons given by appellant for not litigating the matter before the DES support a finding of nonpreclusion. *See Lewis v. IBM Corp.,* 393 F.Supp. 305 (D.Or.1974).

Furthermore, the practical reasons in not securing the representation of counsel for the DES proceedings, the procedural opportunities available in a suit for wrongful termination not available at the DES proceedings and the possibility that the bankruptcy court's decision may "intensify litigation" before the DES support reversal of the bankruptcy court's decision. *Id.* at 308–09. *See also Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed. 2d 552 (1979).

Finally, the doctrine of res judicata is inapplicable to the facts of the instant case.

It is So Ordered.