H. W. ELLIS, INC. *vs.* FRED R. ALOFSIN *et al. d.b.a.* A & F CONSTRUCTION COMPANY.

APRIL 10, 1958.

PRESENT: Condon, C. J., Roberts, Andrews and Paolino, JJ.

ANDREWS, J. This is an action of assumpsit to recover on certain painting contracts. It was tried to the court which gave a decision for the plaintiff for $3,174.61, of which sum $170.50 is for interest. The defendants excepted to the decision and that is the only exception pressed before us. Their other exceptions being neither briefed nor argued are deemed to be waived.

The plaintiff was a painting contractor and defendants were engaged in constructing and remodeling houses. In this action the plaintiff sought to recover for ten painting jobs which according to its evidence totaled $4,004.11. A payment of $1,000 was admitted. The defendants contested the price on half the jobs and claimed the balance due was $1,361.35.

One of the defendants, Dr. Alex Friedman, who was the only witness called by them, testified that near the beginning of their dealings with plaintiff he loaned $150 to plaintiff's foreman. The trial justice was of the opinion that this was done to put the foreman under obligation to him, and it is clear that this led the trial justice to place little reli-

ance on the testimony of this witness. He characterized Herbert W. Ellis, the president, treasurer and general manager of the plaintiff corporation, and its main witness, as "a thoroughly honest man."

The first contested item was on what was called the Farm House where plaintiff claimed $1,149.10 and defendants contended that this job was covered by a written flat price contract of $550 signed by plaintiff's foreman. Ellis denied that the foreman had authority to enter into a flat price contract and the foreman was not produced as a witness. The defendants had the burden of proof on the issue of the authority of the foreman to make such a contract. See *Goodman* v. *Zitserman,* 47 R. I. 466, 468. The trial justice believed Ellis, stating it was inconceivable that plaintiff would grant such authority, as one bad contract "could easily put him out of business."

The trial justice further found that the document relied upon was not a contract, saying in part "* * * the exhibit is a mere proposal. Its terms are so indefinite that it would hardly be possible to predicate a proper contract upon the terms. It begins as follows: 'As agreed. . .', referring to, apparently, a previous oral agreement, '. . we will paint interior of above job complete for a price not to exceed $550.' Now, that's a top price, that's not a flat price. It goes on to say, 'This work is to be done when vacant only. This includes labor and some materials as we are to use material on hand.' How much material does it include? Where is the rest coming from? As a basis for a contract, it is too indefinite and I find that no such contract was made." We agree with this conclusion of the trial justice.

The next contested item concerns the inside of the Dexter street house. Here plaintiff made a charge of $560, whereas defendants claim that they should have been given a credit of $61.05 for paper furnished by them. Doctor Friedman said the foreman agreed to give that credit. Ellis testified that there was no such agreement and it was not

customary for the painter to furnish paper. Doctor Friedman admitted that on the other jobs they did not get a like credit. Here again defendants failed to prove the authority of the foreman to give such credit on this job.

The third item concerned the painting of the outside of the Dexter street house. The plaintiff made a charge of $475, but defendants claimed that the foreman agreed that if they would furnish the paint he would do the work for the $150 which he owed Dr. Friedman. However, the plaintiff's witnesses showed that this work was in fact done by plaintiff's own workmen and it is apparent that Dr. Friedman must have seen them doing it. Ellis denied all knowledge of this alleged contract with the foreman. Furthermore, the price of $150 was so low as to make it highly unlikely that the foreman would have made such an agreement. We have noted that the foreman was not called as a witness, and from this unexplained failure the trial justice might have drawn an unfavorable inference against defendants. See *Higgins* v. *Mycroft,* 80 R. I. 118.

The fourth contested item was for work done by plaintiff on Dr. Friedman's office for which it made a charge of $82. It is clear the foreman fixed this price. Doctor Friedman testified that Ellis agreed to accept $48 but Ellis denied it. The evidence on this subject is somewhat hazy. However, it is reasonably apparent that Ellis was willing to make an adjustment on this item but he said no figure was actually arrived at.

The last contested item involved what was called the Sherwood Park houses. Ellis testified that he agreed to do two of the houses for $425 apiece and that he would undoubtedly have agreed to do the third one at the same price had he been asked. He further admitted that none of these jobs was fully completed but submitted uncontradicted evidence that what work was done by his company was worth $773.61. Here again the foreman comes into the picture. Doctor Friedman testified that he had given the completion

of these jobs to the foreman, and without consulting Ellis had agreed with the foreman on how much should be allowed plaintiff and how much should be paid the foreman for completing the work. All this resulted in conferences at one of which Dr. Friedman said Ellis agreed that when the $1,000 was paid the balance would be $1,361.35. This figure was arrived at by treating the charge for the work on Dr. Friedman's office as $48. Ellis denied any such agreement. At one of these conferences Dr. Friedman, Ellis, the trial lawyers for the parties, and George Teitz, who was an attorney for Dr. Friedman, were present. Mr. Teitz was not called as a witness and his absence was not explained. See *Higgins* v. *Mycroft, supra.*

Except for the construction of the so-called written flat price contract, all the other questions are ones of fact. Since the trial justice found as a fact, and he was justified in so doing, that the foreman had no authority to enter into such a contract, the decisions of all those questions depended upon which witnesses were believed. As was stated in *Terrien* v. *Joseph,* 73 R. I. 112, 116: "The credibility of the witnesses was primarily a question for the trial justice to determine. He saw and heard them testify, an advantage which we do not have. On the conflicting evidence in the record before us we cannot say that he was clearly wrong on the issue of defendant's liability." By a parity of reasoning we cannot say that the trial justice was clearly wrong in deciding for plaintiff on these contested items.

A reading of the transcript discloses that the trial justice followed the case closely. The transcript further indicates that the trial was concluded on Wednesday but the decision was not given until two days later. The interval gave the trial justice an opportunity to go over his notes. He appears to have availed himself of such opportunity since his decision clearly shows that he had all the material evidence in mind and made his findings in the light thereof. In view of this situation we cannot say that he miscon-

ceived the evidence, overlooked any material part thereof, or was clearly wrong in his decision.

All of the defendants' exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*Coffey, Ward, Hoban & McGovern, Charles J. McGovern,* for plaintiff.

*Kirshenbaum & Kirshenbaum, Max Levin,* for defendants.