Anna M. O'Connor, as Executrix of David W. O'Connor, Deceased, Respondent-Appellant, v State of New York, Appellant-Respondent.

Third Department, February 26, 1987

## APPEARANCES OF COUNSEL

*Robert Abrams*, Attorney-General (*Michael S. Buskus* of counsel), for appellant-respondent.

*DeGraff, Foy, Conway, Holt-Harris & Mealey* (*John T. De-Graff, Jr.*, and *Michael J. Cunningham* of counsel), for respondent-appellant.

## OPINION OF THE COURT

MAIN, J.

On Thursday, June 19, 1980 at about 6:45 P.M., claimant's decedent was struck and killed at the State Office Building Campus (State Campus) located in the City of Albany. The State Campus is circumscribed by two one-way highways, the inner highway carrying traffic in a clockwise direction and the outer highway carrying traffic in a counterclockwise direction. Decedent was struck by a bicycle being operated by Arthur Sulger as he and a neighbor crossed the inner highway at a marked pedestrian crossing. That evening and for some time previously thereto, the Northern New York Cycling Association (the association), an organization formed for the purpose of promoting bicycle racing, was using the inner highway for different types of bicycle racing. On that particular evening, the event being conducted was not a head-to-head race but was a two-lap race against the clock around the inner highway. The participants were timed when they left the starting point and when they crossed the finishing point, and about 20 racers participated and were started individually at intervals of one minute. Sulger was a participant and rode a racing bike, and wore racing gear including a helmet. The association used the roadways for the bicycle sprints and races, and the Capital Police, employees of the State who patrolled the State Campus, were aware of this fact. Sulger was ultimately con-

victed of failure to yield the right-of-way to a pedestrian on a crosswalk (Vehicle and Traffic Law § 1151 [a]) and failure to exercise due care (Vehicle and Traffic Law § 1154).

Decedent's estate commenced an action in Supreme Court against Sulger and other individuals associated with the association. Such action was settled with regard to all of the defendants except Sulger. A jury found damages of $980,000 and assessed culpable conduct as 60% against decedent, 34% against Sulger and 6% against the settling defendants.

Claimant then commenced the instant action against the State in the Court of Claims. After a trial, the court found that the State was negligent and set damages at $680,870. The court apportioned culpable conduct at 50% against the State and 50% against decedent. The State appeals, contending, *inter alia,* that the State did not breach its duty, that claimant is collaterally estopped from arguing or attempting to prove that decedent's fault was less than 60% and, accordingly, if responsible, its share was considerably less than 50%, and that the court erred in its computation of interest due on the judgment. Claimant cross-appeals, finding fault with the Court of Claims computation as to the amount of the judgment. We will address these issues *ad seriatim.*

■ Claimant proceeded on several theories of negligence. First, it was argued that the State failed to "fully and efficiently" patrol the course of a "[contest] for speed" in violation of Vehicle and Traffic Law § 1182. However, that statute, by its terms, deals only with motor vehicles and, accordingly, is inapplicable to this case. Claimant's other theories of negligence were that the State breached its voluntarily assumed duty of patrolling the State Campus, its duty to maintain its highways in a safe condition and its duty of care as a landowner.

It is to the latter theory, the State's duty as a landowner, that we first direct our attention. The initial inquiry is whether the State owed a duty to plaintiff *(see, Pulka v Edelman,* 40 NY2d 781, 782), and if such a duty is found to exist, foreseeability determines the scope of that duty *(see, Palsgraf v Long Is. R. R. Co.,* 248 NY 339).

The fact that the State owned the State Campus and the roadways located thereon did give rise to a duty of care. The State owed the same duty of care as that of a private landowner, the "duty to exercise reasonable care under the circumstances in maintaining its property in a safe condition"

*(Kush v City of Buffalo,* 59 NY2d 26, 29; *see, Mesick v State of New York,* 118 AD2d 214, *lv denied* 68 NY2d 611). Further, since the State owned and maintained the highway on which the accident took place, it was under a duty to maintain such highway in a reasonably safe condition in view of all of the circumstances *(see, Tomassi v Town of Union,* 46 NY2d 91, 97). This duty extends to pedestrians; the State must provide pedestrians with a reasonably safe place to travel *(see, Sanford v State of New York,* 94 AD2d 857, 859).

In *Basso v Miller* (40 NY2d 233), the Court of Appeals abandoned the classifications of status and adopted the single standard so clearly stated in *Smith v Arbaugh's Rest.* (469 F2d 97, *cert denied* 412 US 939), which defines the duty as follows: " 'A landowner must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk' " *(Basso v Miller, supra,* at 241, quoting *Smith v Arbaugh's Rest., supra,* at 100). A determination as to whether the duty was breached requires an analysis of the evidence presented at trial. The uncontradicted evidence demonstrates that the accident occurred on the inner highway at the State Campus which is about two miles in length and has several pedestrian crossings; that the same is owned and controlled by the State; that decedent was struck and killed while within a designated crosswalk and at a point near the completion of his traverse of the highway; that he was struck by a bicycle rider who, with other cyclists, was engaged in a race against time; that the racers' position is such that their bodies are horizontal with the ground and their heads are down so as to provide less wind resistance; that such a position limits the riders' view; that the bicycles traveled swiftly but silently; that pedestrian traffic in the area of the inner highway during the summer evenings was moderate to heavy; that pedestrians were not warned that races were in progress and, most significantly, that the State permitted the association to conduct the races and its employees, the Capital Police, were aware of and viewed the various cycling activities for an extended period of time prior to this accident.

There can be little doubt that the staging of the June 19, 1980 races against time presented additional and unexpected hazards to users of the highway, motorists, bicyclists and pedestrians alike, and reasoned foresight would have signaled the dangers encountered. The Court of Claims concluded in

light of these circumstances that the State breached its duty as a landowner by failing to exercise reasonable care to abate a known danger when it had ample opportunity to do so. The court further found that this omission constituted negligence which was a contributing proximate cause of the accident and decedent's death for which the State must, in part, respond in damages to the extent of the percentage of its culpable conduct. We find no reason to disturb the Court of Claims finding of negligence on the part of the State nor its assessment of its degree of fault.

■ We turn next to the State's second contention, i.e., that claimant is collaterally estopped in this Court of Claims action from arguing or attempting to prove that his comparative fault was less than 60%, the figure determined by the jury in the Supreme Court action as reflecting decedent's share of culpable conduct. With the demise of the doctrine of mutuality *(see, B. R. De Witt, Inc. v Hall,* 19 NY2d 141, 147), there are left but two necessary requirements for the invocation of the doctrine of collateral estoppel. There first must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action and, secondly, there must have been a full and fair opportunity to contest the decision now said to be controlling *(Schwartz v Public Adm'r of County of Bronx,* 24 NY2d 65, 71). We have no difficulty in concluding that decedent's negligence was an issue common to both actions. The relevant issue is the degree of that negligence. In the Supreme Court action, decedent's culpability was established in relation to and in comparison with that of the other parties to that action. The State was not and could not have been a party thereto *(see, Horoch v State of New York,* 286 App Div 303). The issue with which we are presently concerned involves the question as to what degree of culpability the State should be charged with, if any, an issue that was not decided nor was it even considered in the Supreme Court action.

Issue preclusion is available to protect a defendant who was not a party to an earlier lawsuit from relitigation of an issue considered alternatively in the prior trial only when it is clear that the prior determination squarely addressed and specifically decided the issue *(O'Connor v G. & R. Packing Co.,* 53 NY2d 278, 280). The issue of the comparative negligence of the parties to this action was never addressed or determined. Of course, had this incident arisen prior to the enactment of the doctrine of comparative negligence (CPLR 1411; L 1975, ch

69), the finding of 60% or of any actionable negligence on the part of decedent could have been invoked by the State to collaterally estop decedent's estate for the reason that decedent's negligence was squarely addressed and specifically decided and his estate was a participant with a full and fair opportunity to contest that issue. While we find no case precisely on point, logic and the language of *O'Connor v G. & R. Packing Co. (supra)* and of *State of New York v County of Sullivan* (54 AD2d 29, 34 [Koreman, P. J., dissenting in part], *revd on dissenting opn below* 43 NY2d 815) lead inescapably to the conclusion that collateral estoppel may not be properly invoked in the present case, for the reason that the issue here involves the comparative degree of culpability and the trier of the facts in the first action had no occasion to consider whether the State may have shared some responsibility for decedent's death.

Though unnecessary for consideration in our decision at bar, for comparison and as illustrative of an identical issue in both actions, we note that any sum fixed as damages in the instant action could not exceed the amount of damages awarded in the Supreme Court action, for that issue was identical and common to both actions and was fully and fairly litigated with decedent's estate as an active participant in that trial. However, a lesser amount could have been and, in fact, was awarded in the Court of Claims action, and properly so, because the State was not a party to the first action and was entitled to and did contest the issue of damages in the Court of Claims *(cf., Page v La Buzzetta,* 96 AD2d 694; Siegel, NY Prac § 474, at 635).

In conclusion, we reject the State's contention that the Court of Claims erred in its calculation of interest due on the judgment and also decline its invitation to "abolish" the long-established rule of joint and several liability *(see, Mosher v State of New York,* 103 AD2d 1018, *lv denied* 63 NY2d 610). Likewise, we reject claimant's argument that the computation of the judgment is mathematically incorrect.

MAHONEY, P. J. (dissenting). While we agree with the majority that the Court of Claims properly found that the State was negligent and that such negligence was the proximate cause of decedent's damages, we cannot agree with the apportionment of culpable conduct. In the prior Supreme Court action, the jury found that the proportion of culpable conduct which caused the damages which was attributable to decedent

was 60%. When the action in the Court of Claims then went to trial, claimant was collaterally estopped from attempting to prove that decedent's share of culpable conduct was less than 60%. For collateral estoppel, or more precisely, issue preclusion, to apply, two requirements must be met, the first being an identity of issue and the second being that the party in the latter action against whom preclusion is sought was a party in the prior action and had a full and fair opportunity to litigate the issue in the first action (see, *Schwartz v Public Adm'r of County of Bronx,* 24 NY2d 65). In the instant case, the State contends that claimant had a full and fair opportunity to litigate the issue of decedent's culpable conduct in the first trial, and the jury's finding on the issue is binding on claimant in the second action. This is an example of third-party issue preclusion (see, *Koch v Consolidated Edison Co.,* 62 NY2d 548, 554, *cert denied* 469 US 1210; *Matter of American Ins. Co. [Messinger—Aetna Cas. & Sur. Co.],* 43 NY2d 184, 190).

In applying this doctrine to the instant case, it is crucial to properly identify the issue necessarily decided in the first action. It is true that the issue of the State's negligence was not decided in the first action. At issue before the jury was decedent's share of the culpable conduct which caused the accident. CPLR 1411 provides that a plaintiff's damages "shall be diminished in the proportion which the culpable conduct attributable to the claimant or decedent bears to the *culpable conduct which caused the damages"* (emphasis supplied). Thus, in any negligence action, the trier of fact must decide the plaintiff's share of culpable conduct which caused the action vis-à-vis all other causes, including conduct of tort-feasors not in the courtroom (see, e.g., *Cid v Bombardier Ltd.,* 91 AD2d 913; *Hyde v County of Rensselaer,* 73 AD2d 1021, *affd* 51 NY2d 927). Accordingly, the culpable conduct of all persons who contributed to the damages is considered even if they are not parties to the action because, for example, they have settled, or are unknown or are not subject to the jurisdiction of the court in which the action was brought (1B Warren's Negligence, Comparative Negligence § 2.02 [2] [C], at 949-950 [3d ed]; Report of Admin Bd of Jud Conf [special six-month pamph], July 1, 1974—Dec. 31, 1974, 1975 NY Legis Doc No. 91, at 140-141).

In the instant case, the jury at the first trial assessed culpable conduct of 60% against decedent. This finding did *not* mean that, as among the parties in the action (i.e., decedent,

Sulger and the cycling association members), decedent was 60% at fault for the accident. Rather, the verdict meant that, considering all causative factors, 60% of the culpable conduct which caused the accident was attributable to decedent. Thus, while the State's liability was not decided in the first action, it was relevant to the extent that it would serve to reduce decedent's share of the culpable conduct which caused the damages.*

In the subsequent action in the Court of Claims, the issue was, again, decedent's share of the culpable conduct which caused the action. Such issue is identical to the issue in the initial Supreme Court action. Since claimant had a full and fair opportunity to litigate that issue in the earlier action, she was precluded from proving that decedent's share of the culpable conduct which caused the accident was less than 60%. Obviously, since the State was not a party in the prior Supreme Court action, it was not so precluded, and could have attempted to prove that claimant's share of the culpable conduct which caused the accident was greater than 60%.

The Court of Claims, therefore, erred in assessing 50% culpable conduct against decedent. This being a nonjury trial, this court can, upon review of the record, grant the judgment which should have been granted, including the apportioning of liability (*Mesick v State of New York,* 118 AD2d 214, 219, *lv denied* 68 NY2d 611).

Based on our review of the record, we see no reason to assess decedent's culpable conduct at more than the 60% arrived at by the jury in the prior Supreme Court action. Therefore, we would modify the judgment by increasing decedent's share of culpable conduct to 60%.

MIKOLL and HARVEY, JJ., concur with MAIN, J.; MAHONEY, P. J., and WEISS, J., dissent and vote to modify in an opinion by MAHONEY, P. J.

Judgment affirmed, with costs.

---

* After the trier of fact determines the plaintiff's share of culpable conduct, the issue of a nonparty joint tort-feasor's culpable conduct is no longer relevant in that action. Because of the doctrine of joint and several liability, all defendants remain liable to the plaintiff for all of his damages less the plaintiff's share of culpable conduct. The apportionment for contribution purposes (CPLR 1402) among the joint tort-feasors is limited to the defendants appearing in the action, assuming the appropriate cross claim, counterclaim or third-party claim was interposed. Contribution from nonparties would be sought by way of a separate action (CPLR 1402).