**Dennis KATHIOS, Plaintiff, Appellant,**

v.

**GENERAL MOTORS CORPORATION, Defendant, Appellee.**

No. 88–1598.

United States Court of Appeals, First Circuit.

Heard Nov. 3, 1988.

Decided Dec. 16, 1988.

Mark J. Welzenbach with whom Edward M. Kaplan and Sulloway Hollis & Soden, Concord, N.H., were on brief for plaintiff, appellant.

James M. Campbell with whom Richard P. Campbell, Matthew Kennedy, Timothy Wilton, Campbell and Associates, Boston, Mass., P.C. and Nicholas J. Wittner, Detroit, Mich., were on brief for defendant, appellee.

Before BREYER and SELYA, Circuit Judges, and CAFFREY,* Senior District Judge.

SELYA, Circuit Judge.

This case offers food for thought in several senses of the phrase. Defendant says that plaintiff has had one bite of the apple and cannot take a second. Plaintiff contends that his initial bite was but a nibble, and that the fruit is not now forbidden. The district court found defendant's view of the prandial arrangements more palatable, and granted summary judgment accordingly. We affirm.

* Of the District of Massachusetts, sitting by designation.

## I. BACKGROUND

The facts germane to this appeal are not much in dispute. On August 16, 1981, plaintiff-appellant Dennis Kathios and two friends, Marc Spellman and Stephen Chick, mixed drinking and driving with predictably disastrous results. Following an afternoon of fishing and drinking beer, not necessarily in that order or priority, the trio repaired to Tortilla Flats (a restaurant in Portsmouth, New Hampshire) for food and additional doses of alcohol. At one point, the threesome left Tortilla Flats, replenished their funds, and returned to imbibe anew. When they departed for good in Spellman's car, a 1981 Camaro manufactured by defendant-appellee General Motors Corporation (GM), Spellman was behind the wheel. He was visibly intoxicated.

A police officer stopped the car. Spellman, emboldened by the grape, led police on a high-speed chase and eventually eluded the gendarmes. He and his passengers reached the Sand Dollar Bar in York, Maine, where their liquid intake continued. They left the bar in the wee hours of August 17. Spellman was still driving. By that time, he, Chick, and Kathios were indisputably intoxicated. When police again tried to halt the vehicle, Spellman took evasive action, but his luck had run out; the car crashed into a utility pole. Appellant sustained severe injuries, resulting in quadriplegia.

Initially, Kathios settled claims against Spellman ($100,000) and the Sand Dollar Bar ($100,233.33). He also brought a dram shop action in a New Hampshire state court against Tortilla of Portsmouth, Inc. (Tortilla), proprietor of Tortilla Flats. Kathios alleged that Tortilla breached statutory and common law duties of care by serving alcoholic beverages to the already crapulous Spellman. That case, which we shall call *"Kathios I,"* was tried in May 1985. Plaintiff presented uncontested evidence that his "special damages"—that is, his lost earnings (past and future, reduced to present value), his hospital and medical bills to time of trial, and the present value of future-care expenses—exceeded $800,000. The jury returned a general verdict in Kathios's favor for $275,000.

Arguing that the award was inadequate in light of the evidence, plaintiff moved for an additur or a new trial on damages. The state court judge denied the motion. Plaintiff did not appeal. The $275,000 judgment, net of offsets for the other settlements, was satisfied.

Some two years later, Kathios took aim at a different target. He filed suit against GM in the United States District Court for the District of New Hampshire. The complaint alleged that the Camaro had been defectively designed because it lacked rear-seat shoulder harness, and that GM's negligence was a proximate cause of appellant's injuries. The defendant lost little time in moving for summary judgment. It contended that plaintiff's damages had been fully litigated in *Kathios I*, and that satisfaction of the resulting judgment extinguished any further claim. The district court allowed the motion. *Kathios v. General Motors Corp.*, No. C–87–311–L, slip op. (D.N.H. Apr. 21, 1988) (*Kathios II*) (unpublished). In substance, the court ruled that plaintiff was collaterally estopped from relitigating the amount of damages. *Id.* at 12.

## II. ISSUE PRESENTED

This appeal presents a narrow, highly specific question. We phrase it thusly: can a plaintiff, having obtained a jury verdict that was subject to reduction under New Hampshire's comparative negligence statute,[1] sue a new defendant for the same

---

1. The comparative negligence statute, as it read on the date of the accident and at the time of the verdict in *Kathios I*, stipulated:

   Contributory negligence shall not bar recovery in an action by any plaintiff, or his legal representative, to recover damages for negligence resulting in death, personal injury, or property damage, if such negligence was not greater than the causal negligence of the defendant, but the damages awarded shall be diminished, by general verdict, in proportion to the amount of negligence attributed to the plaintiff....

   N.H.Rev.St.Ann. § 507:7–a. The statute was repealed in 1986. The amended version, N.H.Rev.

injuries and damages, after the first judgment has been satisfied?

Under *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), state law controls in this diversity action; and the parties agree that we should look specifically to New Hampshire jurisprudence.

## III. DISCUSSION

As articulated by the highest court of the state, the doctrine of collateral estoppel bars a party from "contesting in a subsequent proceeding on a different cause of action any question or fact actually litigated and determined against [him] in a prior suit." *Bricker v. Putnam,* 128 N.H. 162, 512 A.2d 1094, 1097 (1986); *see also Bricker v. Crane,* 118 N.H. 249, 387 A.2d 321, 323 (1978) (same). In New Hampshire, the doctrine "is no longer grounded upon mechanical requirements of mutuality." *Fiumara v. Fireman's Fund Ins. Cos.,* 746 F.2d 87, 92 (1st Cir.1984). Instead, it "may be invoked ... by a party to a later case who was not a party or in privity with a party to the earlier case." *Caouette v. Town of New Ipswich,* 125 N.H. 547, 484 A.2d 1106, 1111 (1984); *accord Sanderson v. Balfour,* 109 N.H. 213, 247 A.2d 185, 187 (1968). Consequently, "[a] party who, after full litigation, has lost on an issue is thereafter barred from litigating the issue with new parties." *Cutter v. Town of Durham,* 120 N.H. 110, 411 A.2d 1120, 1121 (1980).

The New Hampshire Supreme Court has cautioned that "the preclusive effect of collateral estoppel extends only to matters that were actually litigated in the earlier case." *Caouette,* 484 A.2d at 1111. For this purpose, "an issue is actually litigated when it is 'properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined.'" *Id.* at 1113 (quoting Restatement (Second) of Judgments § 27, comment d); *see also Daigle v. City of Portsmouth,* 129 N.H. 561, 534 A.2d 689, 693 (1987) (issue on which estoppel is sought "must have [been] resolved ... finally on the merits" in prior action).

The core consideration is not whether a litigant put in his best case on the point during the first go-around, but whether he has had "a full and fair opportunity ... to litigate the issue barring him," *Sanderson,* 247 A.2d at 187. This benchmark has been achieved, GM asseverates, because *Kathios I* determined appellant's damages, taking into account the extent of his comparative fault, with binding effect. For analytic purposes, we split this assertion into its logical subsets.

A. *Aggregate Damages.* We think it obvious that the amount of damages was fully litigated in the state court. There, plaintiff averred in his writ that Tortilla should be held

> fully liable, responsible and accountable for all damages that have been suffered by the plaintiff, including but not limited, to conscious pain and suffering, medical expense, loss of future earning capacity, and future medical care and treatment expenses which will be required due to the plaintiff's condition and all such other damages as are permissible by law or statute.

At trial in *Kathios I,* plaintiff pursued the course adumbrated by the writ. He presented plethoric proof on damages, including three expert witnesses. The judge charged on all the elements of a damage award. The jury set the sum. In denying Kathios's posttrial motion, the state judge necessarily rejected the argument that the jury verdict was unreasonably small. Plaintiff took no appeal.

We need polish this apple to no shinier a gloss. Appellant's counsel admitted during oral argument that the measure of damages for bodily injury would be the same in a dram shop suit and a product liability action. We are therefore constrained to conclude that the jury verdict in *Kathios I,* coupled with the unchallenged ruling upholding the award, caps any verdict which might be rendered in *Kathios II. See O'Connor v. State,* 126 A.D.2d 120, 512 N.Y.S.2d 536, 540 (3d Dept.) (where estate obtained tort verdict against bicyclist and

Stat.Ann. § 507:7–d, applies only to causes of action arising on or after July 1, 1986.

later brought negligence action against State for same injuries, damages could not exceed total fixed in first action, since "issue was identical and common to both actions and was fully and fairly litigated with [plaintiff's] estate as an active participant in that trial"), *aff'd*, 70 N.Y.2d 914, 519 N.E.2d 302, 524 N.Y.S.2d 391 (1987). Thus, the resolution of the issue in *Kathios I* collaterally estops plaintiff from seeking redetermination of his damages in the instant action. *See Cutter*, 411 A.2d at 1121 (where no appeal was taken from prior judgment, decision was final and party was collaterally estopped from relitigating same issue in later case); *see also Fiumara*, 746 F.2d at 91 (similar).

Withal, a problem remains. Because the jury was charged in accordance with N.H. Rev.St.Ann. § 507:7–a, *see supra* note 1, and only a general verdict was rendered, the panel could well have found aggregate damages in excess of $275,000 and reduced the award to that amount in consequence of appellant's relative fault.[2] To illustrate, the jury might have determined $500,000 to be Kathios's aggregate damages, apportioned fault 45/55, and awarded him 55% of $500,000, viz. $275,000. Yet we know that, if the jury found appellant to be more than 50% at fault—that is, if his negligence was "greater than the causal negligence of the defendant," N.H.Rev.St.Ann. § 507:7–a—he could not have recovered *at all*. Given the $275,000 award, then, the highest level of damages the jury could conceivably have found would be 2 × $275,000, *i.e.*, $550,000. Thus, taken most favorably to plaintiff, the jury's award might have represented a determination that Kathios's damages totalled a maximum of $550,000, reduced by 50% to account for comparative negligence. We will assume that such a computation occurred as we progress to the next subset.

B. *Comparative Fault.* Appellant hypothesizes two main reasons why the jury's assessment of comparative fault in *Kathios I* should not bind him now. We do not believe that either offering is fruitful.

1. *Negligence/Misconduct.* Appellant's first line of attack is in effect to accuse the district court of comparing apples with oranges; according to Kathios, litigating the issue of "plaintiff's negligence" in an ordinary tort suit should not preclude litigation of the "different" issue of "plaintiff's misconduct" in a strict liability action. We survey the terrain.

Although N.H.Rev.St.Ann. § 507:7–a by its terms applies only to actions for "negligence," the New Hampshire Supreme Court decided in 1978 to apply the concept of comparative causation to product liability actions. *See Thibault v. Sears, Roebuck & Co.*, 118 N.H. 802, 395 A.2d 843, 848 (1978).[3] For ease in reference, the court adopted the new term "plaintiff's misconduct" rather than carrying over the phrase "comparative negligence." The court made plain, however, that the switch in terminology was semantic, not substantive:

If the trial courts use the term "plaintiff's misconduct" to replace the words "contributory negligence" in the jury charge, this will separate the theories of strict liability and negligence more effectively in the minds of twelve laymen. "Plaintiff's misconduct" will include, where applicable, product misuse or abnormal use, as well as embodying the "negligence" or "assumption of the risk" concepts in our prior cases of voluntarily and unreasonably proceeding to encounter a known danger. The words "plaintiff's misconduct" accurately describe what action by the plaintiff, combined

---

2. Plaintiff can scarcely complain of the imprecision of the general verdict. The state court judge considered sending *Kathios I* to the jury on special interrogatories, and would apparently have done so, but Kathios objected.

3. Prior to 1978, the state supreme court had not spoken directly to the issue. Federal courts, however, including our own, had assumed comparative negligence to be applicable in strict liability cases arising under New Hampshire law. *See, e.g., Stevens v. Kanematsu–Gosho Co.*, 494 F.2d 367, 370–71 (1st Cir.1974); *Hagenbuch v. Snap–On Tools Corp.*, 339 F.Supp. 676, 680–82 (D.N.H.1972). The state trial courts, up to 1978, had apparently followed the federal courts' lead. *See Thibault*, 395 A.2d at 850.

with the interaction of a defendant's product, caused an accident or injury. *Id.* 395 A.2d at 849. Appellant makes much of the quoted reference to "voluntarily and unreasonably ... encounter[ing] a known danger," but to no avail. The *Thibault* court, 395 A.2d at 848–49, relied in considerable part upon the example of *Daly v. General Motors Corp.*, 20 Cal.3d 725, 144 Cal.Rptr. 380, 575 P.2d 1162, 1165–68 (1978). *Daly* was a "second collision" case in which the family of a deceased motorist sued GM, alleging that a door latch on decedent's car was improperly designed. The California court ruled that comparative negligence principles should apply in strict liability actions, and that GM could therefore assert decedent's intoxication and nonuse of safety equipment as a partial defense. The facts in *Daly* seem functionally identical to those at bar, and the state supreme court's reliance on that authority makes it crystal clear that the concept of plaintiff's misconduct in New Hampshire jurisprudence entirely subsumes the concept of comparative negligence.

If any further question of this sort survived *Thibault*—and we can think of no viable basis for one—then the state supreme court's subsequent decision in *Reid v. Spadone Machine Company*, 119 N.H. 457, 404 A.2d 1094 (1979), dispelled all doubt. In *Reid*, a product liability case, Justice Grimes wrote for a unanimous court:

> The manufacturer or seller faced with an allegation of strict liability in tort for a defective design may have several defenses against liability, for example, product misuse or abnormal use, *and what was formerly termed contributory negligence* or unreasonable assumption of the risk. These defenses relate to the comparative fault of the plaintiff and are now classified as 'plaintiff's misconduct'.

*Id.* at 1098–99 (citations omitted; emphasis supplied). In the face of *Reid*, to argue

that the concept of "plaintiff's misconduct" is somehow less inclusive than the concept of "plaintiff's negligence," seems fruitless.

Last but not least, we note that the district judge, a former New Hampshire lawyer and justice of the state superior court, made a careful analysis of this question and concluded that:

> Whether couched in misconduct or comparative negligence, the issues relative to the defenses in the two actions [*Kathios I* and *Kathios II*] are identical. The acts of the plaintiff which were evaluated in the earlier trial as to his comparative fault also constitute plaintiff's misconduct in this case. Whatever fault the jury attributed to plaintiff in *Kathios v. Tortilla of Portsmouth, Inc.,* [*Kathios I*] is equally applicable to this litigation and, thus, the award would be identical. The distinction is one of semantics....

*Kathios II*, slip op. at 10–11.[4] Given the soundness of his reasoning, Judge Loughlin's convincing opinion warrants our deference. *See Bishop v. Wood*, 426 U.S. 341, 346 & n. 10, 96 S.Ct. 2074, 2078 & n. 10, 48 L.Ed.2d 684 (1976) (federal appellate courts should be hesitant to overrule state-law constructions of district judges familiar with local law); *Rose v. Nashua Bd. of Educ.*, 679 F.2d 279, 281 (1st Cir.1982) (similar).

Taking these reasons separately, we feel confident in concluding that the New Hampshire Supreme Court meant to encompass fully the concept of comparative negligence within the rubric of plaintiff's misconduct. Taking them in the aggregate, the thesis assumes lead-pipe certainty. Consequently, we rule, as did the court below, that the earlier litigation of plaintiff's comparative negligence binds him on the degree of his misconduct in the instant action.

2. *Compared to What?* The second tree in appellant's orchard may not be so barren. He argues that an assessment of

---

4. In the same vein, the district court also wrote that "[i]n the earlier litigation, the jury considered plaintiff's state of intoxication, voluntarily choosing to ride with an intoxicated driver and encouraging and assisting the driver to

drink and drive the General Motors Vehicle in which plaintiff rode. These same acts clearly contribute[d] to plaintiff's misconduct with respect to the product in this case." *Kathios II*, slip op. at 12.

comparative negligence in *Kathios I* can have no collateral estoppel effect because the jury determined his comparative negligence vis-a-vis Tortilla alone, without having an opportunity to compare plaintiff's fault to that of GM. Predictably, appellee's view of the world is considerably different. It says that the jury in *Kathios I* simply calculated the degree to which plaintiff's own conduct caused his injuries—nothing more or less. Such a finding, GM tells us, deserves collateral estoppel effect in a later action, because the degree of Kathios's personal fault was fully litigated and would remain unchanged regardless of the identity of the defendant(s) in any given suit.

Each position seems somewhat plausible; the choice between them depends upon state law. If the controlling principles of comparative fault in a particular jurisdiction require a comparison between a plaintiff's misconduct and that of the named defendant(s), and no one else, then a determination of comparative negligence in one suit would likely be irrelevant to subsequent actions against a different defendant or set of defendants. *See, e.g., O'Connor v. State,* 524 N.Y.S.2d at 392 (where estate prevailed in tort against bicyclist and later sued State, prior determination of decedent's comparative negligence did not collaterally estop plaintiff because first trial did not address relative culpability as between decedent and State); *Drescher v. Hoffman Motors Corp.,* 585 F.Supp. 555, 558 (D.Conn.1984) (finding of 80% negligence in original case did not collaterally estop plaintiff in subsequent suit against automobile distributor, where essential issue decided in first case was plaintiff's negligence compared head-to-head with that of owner). The converse, however, is equally true. If, under the applicable law of comparative fault, the jury is to determine plaintiff's causal misconduct in relation to all the world, then its verdict becomes the last word on the subject and should enjoy collateral estoppel effect. *See, e.g., Pillo v. Reading Co.,* 232 F.Supp. 761, 762 (E.D.Pa.1964) (satisfied judgment against individual tortfeasors barred plaintiff's subsequent action for same injuries

under Federal Employers' Liability Act; second action would lead to double recovery, since plaintiff "had his day in court and has presumably received full compensation"); *Presser v. United States,* 218 F.Supp. 108, 111–12 (E.D.Wis.1963) ("[T]he finding of the jury in the prior action that plaintiff failed to exercise ordinary care for his own safety, and that 40 per cent of the causal negligence was attributable to plaintiff, is res adjudicata in the instant action even though defendant, United States, was not a party to that prior action."); *Fletcher v. California Portland Cement Co.,* 99 Cal.App.3d 97, 99–100, 159 Cal.Rptr. 915 (1979) (full satisfaction of judgment in federal action by plaintiff against employer, where award was reduced because jury found that plaintiff's negligence contributed 45% to his injuries, barred subsequent lawsuit in state court against concurrent tortfeasor for same injury), *cert. denied,* 447 U.S. 923, 100 S.Ct. 3015, 65 L.Ed.2d 1116 (1980).

We turn, then, as a federal court in diversity must, to applicable state law. In New Hampshire, there are precedents close to the mark, but the precise question is apparently one of novel impression. Accordingly, "it becomes our duty to vaticinate how the state's highest tribunal would resolve matters." *Moores v. Greenberg,* 834 F.2d 1105, 1107 (1st Cir.1987). As judicial sibyls, we may seek inspiration from such sources as analogous state court decisions, adjudications in cases elsewhere, and public policy imperatives. *Id.* Our function is not to formulate a tenet which we, as free agents, might think wise, but to ascertain, as best we can, the rule that the state's highest tribunal would likely follow. *Id.* at 1107 n. 3 (citing *Lowe's North Wilkesboro Hardware, Inc. v. Fidelity Mut. Life Ins. Co.,* 319 F.2d 469, 472 (4th Cir.1963)).

We begin by considering the text of N.H. Rev.Stat.Ann. § 507:7–a, inasmuch as the state supreme court "judicially recognize[s] the comparative concept in strict liability cases parallel to the legislature's recognition of it in the area of negligence." *Thibault,* 395 A.2d at 850. The statute specifically provides that, if a plaintiff's "negli-

gence was not greater than the causal negligence of the defendant ... the damages awarded shall be diminished, by general verdict, *in proportion to the amount of negligence attributed to the plaintiff....*" N.H.Rev.Stat.Ann. § 507:7–a (emphasis supplied). The underscored language militates strongly in favor of GM's position: by its terms, the statute reduces a plaintiff's verdict by the full amount of plaintiff's fault, rather than having the jury assess plaintiff's fault only in relation to a particular defendant. *See Hurley v. Public Service Co.*, 123 N.H. 750, 465 A.2d 1217, 1219 (1983) (under § 507:7–a, recovery should be "reduced in the ratio that the negligence of the plaintiff contributed to the injury"); *Cyr v. B. Offen & Co.*, 501 F.2d 1145, 1150 (1st Cir.1974) (similar). Indeed, when applying the principles which inform the comparative negligence statute to strict liability actions, the New Hampshire Supreme Court has read the law precisely this way:

> If plaintiff's proof is sufficient, the jury must weigh the plaintiff's misconduct, if any, and reduce the amount of damages *by the percentage that the plaintiff's misconduct contributed to cause his loss or injury* so long as it is not greater than fifty percent.

*Thibault*, 395 A.2d at 850 (emphasis supplied). The discussion in *Thibault* is powerful evidence that, were the issue squarely presented, New Hampshire would prefer appellee's interpretation of § 507:7–a.

Admittedly, the statute is not free from all ambiguity. By its letter, the mechanism of comparative negligence comes into play only when plaintiff's negligence is equal to, or less than, "the causal negligence of *the* defendant...." (emphasis supplied). It is this phrase which forms the centerpiece of plaintiff's contention. But there is a worm in Kathios's apple: the New Hampshire Supreme Court has already construed that very language in a related context, *see Hurley*, 465 A.2d at 1219–20, and rejected any limitary implication.

Because *Hurley* seems to us a qualtagh, we examine the decision in some detail. There, a jury found each plaintiff 50% re-

sponsible for his own injuries, assigning each defendant (there were two) 25% of the responsibility. On appeal, a defendant pointed to the words quoted above and argued that any one plaintiff's negligence should only be compared with that of each defendant, separately. 465 A.2d at 1219. If vindicated, this position would have precluded recovery against any given defendant who was less negligent than the given plaintiff—a result which would obtain even if the combined negligence of all defendants was greater than plaintiff's. The New Hampshire Supreme Court rejected this reasoning outright, construing the statutory phrase "the defendant" to mean "all defendants." *Id.* at 1220. In so holding, the court adopted the so-called "aggregate rule." *Id.; see also* Note, *Comparative Negligence*, 81 Colum.L.Rev. 1668, 1673–74 (1981). The court wrote:

> We do not find the use of the singular to be dispositive. With respect to statutory construction, RSA 21:3, specifically provides that words importing the singular may extend and be applied to several persons.... [The objecting defendant's] approach is contrary to the basic policy of our comparative negligence statute....

*Hurley*, 465 A.2d at 1220. When juxtaposed with the statute's explicit direction to juries to reduce verdicts according to the plaintiff's negligence, *Hurley* seems well nigh dispositive.

At the expense of leaving ourselves open to a charge of bringing oranges to Florida, we note that strong public policy considerations also support appellee's stand. The statutory construction hawked by Kathios would place defendants in a perhaps untenable, certainly unfair, position. If, as appellant suggests, a plaintiff's negligence is to be calculated only in relation to that of the particular respondent(s) whom he elects to sue, then a plaintiff who was, say, 10% negligent, could sue a defendant who was likewise 10% negligent and recover 50% of his damages. Even if a plaintiff's overall recovery is capped at 100% of actual damages, the upshot remains badly skewed. As a leading text recognizes, "failure to consider the negligence of all tortfeasors,

whether parties or not, prejudices the joined defendants who are thus required to bear a greater portion of the plaintiff's loss than is attributable to their fault." W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on The Law of Torts* 475–76 (5th ed. 1984). That outcome strikes us as antithetic to the objective of New Hampshire's comparative negligence statute, which is "to allocate more equitably the responsibility for injuries due to negligent conduct on the part of parties on both sides of a lawsuit." *Hurley*, 465 A.2d at 1221.

Concerns relating to judicial economy also militate against allowing plaintiffs to litigate their cases over and over, against one defendant at a time. With characteristic concern for parsimony, the New Hampshire state courts have consistently placed a premium upon judicial husbandry; indeed, the state's disdain for litigatory replays stems largely from this philosophy. *See Scheele v. Village District of Eidelweiss*, 122 N.H. 1015, 453 A.2d 1281, 1284 (1982) ("Considerations of judicial economy and a policy of finality in our legal system have resulted in the development of the doctrines of res judicata and collateral estoppel to avoid repetitive litigation.").[5] It is for such reasons that the state supreme court has forbidden essentially pleonastic trials in situations analogous to the case before us. *See, e.g., Eastern Marine Construction Corp. v. First Southern Leasing, Ltd.*, 129 N.H. 270, 525 A.2d 709, 713 (1987) (res judicata barred plaintiff's second suit against defendant over same factual transaction, "notwithstanding the fact that it requests relief based upon different theories than those raised in the first suit"); *Boucher v. Bailey*, 117 N.H. 590, 375 A.2d 1160, 1162 (1977) ("Conflicting claims flowing from a common source should be determined in a single action, thus avoiding vexatious litigation and conflicting judgments."). These very same

concerns, we suggest, argue persuasively in favor of reading the state's law of comparative fault to facilitate definitive resolution of the overall extent of a plaintiff's negligence in a single trial.

## IV. CONCLUSION

We summarize succinctly. Appellant laments that no jury has heard his claim against GM. That is so, but beside the point. In *Kathios I*, appellant had a full-sized bite of the apple. The jury made binding determinations that plaintiff's damages totalled at most $550,000; and that, when comparative fault was taken into account, plaintiff was entitled to recover only $275,000. In short, the *Kathios I* jury conclusively adjudicated the extent of appellant's fault and of his damages. And the resulting judgment was fully satisfied.

The New Hampshire courts have long held that "a judgment on the merits against one liable for a tort, followed by satisfaction, works a discharge of others similarly liable for the same injury." *Colby v. Walker*, 86 N.H. 568, 171 A. 774, 777 (1934). Kathios, therefore, may recover nothing from the automaker. Though he found the fruits of his state court trial to be unappetizing, he is estopped to relitigate either of the critical issues anew, whether against GM or any other tortfeasor.

We need go no further. In bringing this suit, plaintiff bit off more than we can let him chew. For the reasons which we have discussed, the order of the district court granting summary judgment in defendant's favor must be

AFFIRMED.

---

5. We articulated a similar set of values in a diversity case involving New Hampshire law. *See Fiumara*, 746 F.2d at 91 (although theories of suit changed, and parties not precisely identical, "[t]here is no reason to expend additional judicial resources on a matter which has already been fully and fairly litigated.... After all, [plaintiff] has already 'had one bite of the apple, and the choice of the bite was [his].'") (quoting *Gonsalves v. Alpine Country Club*, 727 F.2d 27, 29 (1st Cir.1984)).