AMERICAN TITLE INSURANCE
COMPANY, Plaintiff,
Appellant,

v.

EAST WEST FINANCIAL
CORPORATION, et al.,
Defendants, Appellees.

AMERICAN TITLE INSURANCE
COMPANY, Plaintiff,
Appellee,

v.

EAST WEST FINANCIAL CORPO-
RATION, Defendant, Appellee.

Bay Loan & Investment Bank,
Defendant, Appellant.

Nos. 91–1848, 91–1849.

United States Court of Appeals,
First Circuit.

Heard Feb. 7, 1992.

Decided March 18, 1992.

Rehearing Denied April 13, 1992.

Max Wistow with whom Stephen P. Shee-
han and Wistow & Barylick, Inc., Prov-
idence, R.I., were on brief, for American
Title Ins. Co.

Howard E. Walker with whom Michael J.
McGovern and Hinckley, Allen, Snyder &
Comen, Providence, R.I., were on brief, for
Bay Loan & Inv. Bank.

Kevin F. McHugh with whom Louis F.
Robbio and Robbio & Nottie, Ltd., Prov-
idence, R.I., were on brief, for East West
Financial Corp.

Before TORRUELLA, Circuit Judge,
ALDRICH and BOWNES, Senior Circuit
Judges.

BOWNES, Senior Circuit Judge.

All parties appeal from the judgment is-
sued after a bench trial by the district
court. Plaintiff American Title Insurance
Company ("American Title") filed suit un-
der 28 U.S.C. §§ 2201 and 2202 seeking a
declaratory judgment that American Title
was not liable under lender title insurance
policies issued to defendant East West Fi-
nancial Corporation ("East West") and de-
fendant Bay Loan & Investment Bank
("Bay Loan"). East West and Bay Loan
counterclaimed for breach of contract and
bad faith refusal to pay under the policies.
The district court granted declaratory judg-
ment in favor of East West and Bay Loan.
It found that while American Title's insur-
ance policies covered East West and Bay
Loan East West's and Bay Loan's damages
claims were premature and dismissed them
without prejudice. The district court also
dismissed their counterclaim for bad faith
refusal to pay under the insurance policies.

### Standard of Review

In bench trials appellate review of facts
is governed by Federal Rule of Civil Proce-
dure 52(a).[1] It states in pertinent part:

---

1. Federal Rule of Civil Procedure 52 was    amended, effective December 1, 1991. The rele-

Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless *clearly erroneous,* and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.... It will be sufficient if the findings of fact and conclusions of law ... appear in an opinion or memorandum of decision filed by the court.

(Emphasis added). *See also Langton v. Johnston,* 928 F.2d 1206, 1218 (1st Cir. 1991); *Cumpiano v. Banco Santander Puerto Rico,* 902 F.2d 148, 152 (1st Cir. 1990); *Jackson v. Harvard Univ.,* 900 F.2d 464, 466 (1st Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 137, 112 L.Ed.2d 104 (1990). We will defer to the trier of facts unless "we form a strong, unyielding belief that a mistake has been made." *Cumpiano,* 902 F.2d at 152. " 'Where there are two permissible views of the evidence, the factfinder's choice between them can not be clearly erroneous.' " *Id.* (quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)).

We likewise review mixed questions of law and fact for clear error. *LoVuolo v. Gunning,* 925 F.2d 22, 25 (1st Cir.1991); *Langton,* 928 F.2d at 1218. Legal error, however, is reviewable de novo. *LoVuolo,* 925 F.2d at 25; *Cumpiano,* 902 F.2d at 153. In diversity actions we do not defer to the district court's finding of local law but rather give plenary review. *Salve Regina College v. Russell,* —— U.S. ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

### Background

We read the facts in light of the standard of review and in favor of the prevailing party. This case involves an unusual type of real estate—the motel condominium—but not so unusual a business transaction—the get-rich quick scheme. Buyers were promised a deal where no money down was required; guaranteed they could not lose money; and assured that they would receive a five percent return on the initial purchase price in five years. Many took "this deal of a lifetime" and all learned that the deal was too good to be true.

Dean Street Development Company ("Dean Street"), a real estate development operation, would purchase already existing operating motels located in Rhode Island. Dean Street invariably used purchase money mortgages to finance each motel purchase. It would then condominimize the motel, selling market title in each separate unit with shared interest in the common areas.

To procure purchasers of these units, Dean Street promised potential buyers that they did not have to make a down payment. Dean Street wired money for the down payment into the buyers' bank accounts prior to closing. At the closing the buyer would return the down payment to Dean Street, receive a credit toward the purchase price, and execute a note in favor of East West, an originator and servicer of mortgage loans. Usually the buyer would also execute a second mortgage in favor of Dean Street which would later be forgiven without repayment. The closings were held at the law office of George Marderosian in Providence, Rhode Island. Marderosian, an authorized agent of American Title, also acted as attorney for the buyer and seller and as settlement agent. Prior to the transaction the buyers signed a document consenting to the apparent conflict of interest by Marderosian at the closing. After the transaction the buyers would lease back the unit to a subsidiary of Dean Street which would rent out the unit. From those rentals Dean Street was supposed to pay the buyers' mortgage payments.

At each closing, a form called a "HUD 1," a document usually reserved for residential closings, was filled out by Marderosian. In the section of the document where prior mortgages that are to be discharged are usually itemized, Marderosian placed an asterisk referring the reader to the bottom of the page. On the bottom of the page the document read: "All mortgage indebtedness paid outside closing prior to

vant portion of Rule 52(a), however, was un-

changed by the amendment.

or immediately subsequent to recording." After each closing, Marderosian would present East West with the completed HUD 1, a mortgage deed and note, and a title policy that Marderosian issued as an agent of American Title. These title policies were "clean"; that is, they indicated that title was free of any liens or encumbrances. East West, after accumulating several sets of these documents, would send them to Bay Loan. Bay Loan would review the documents and was free to either approve or reject each loan. If the loan was denied the closing would be voided and title returned to Dean Street. If the loan was approved, the funds would be wired to East West. East West would then distribute the money to either Marderosian or, in some cases other parties. In at least one instance the money went to Dean Street directly.

By the spring of 1989, two years after the first deal was consummated, it became clear that several of the motels were still encumbered by prior liens not listed in the title insurance policies.[2] For example, Bay Loan held outstanding mortgages on thirty-three units in the Charlestown Inn. A prior senior mortgagee foreclosed on its mortgage on October 24, 1989, wiping out Bay Loan's outstanding mortgages. In another project, the Hillside Motel Condominium, Bay Loan held outstanding mortgages on all thirty-six units. A prior senior mortgagee foreclosed on the property and Bay Loan bought the property at the foreclosure sale on September 25, 1989. In the Sandpiper Motel Condominium project Bay Loan held outstanding mortgages on thirty-seven of the thirty-nine units. A prior mortgagee foreclosed on the property on July 25, 1989, wiping out Bay Loan's mortgages. And finally at the Sand Castle Motel condominium project, Bay Loan held

outstanding mortgages on all twenty-four units. Again a prior senior mortgagee foreclosed, wiping out Bay Loan's security interest.

After discovering the defects in title, Bay Loan filed a notice of claim with American Title under the title policies. American Title in response, on July 26, 1989, filed a complaint against East West and Bay Loan in district court seeking declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, seeking relief from liability on the title policies. It advanced several rationales for relief: (1) Marderosian did not have actual or apparent authority to issue the policies; (2) Bay Loan had "created, suffered or assumed" the risk of defective title and therefore was not covered by the policy; (3) Bay Loan's mortgages were uninsurable or void as a matter of law because of alleged securities law violations; and (4) the policies lacked consideration.

East West and Bay Loan counterclaimed alleging: (1) that American Title had breached its contract under the title policies and that they were entitled to payment; and (2) that American Title in bad faith refused to pay under the policy.[3] The district court held a seven-day bench trial. In its opinion dated April 10, 1991, the district court held that American Title was liable under the title insurance policies. On American Title's claim that Marderosian lacked actual or apparent authority, the court found that Marderosian lacked actual authority to issue " 'clean' title insurance policies for properties that were subject to existing mortgages" under the express terms of his agency agreement with American Title.

The court held, however, that Marderosian did have apparent authority. Finding that Marderosian had apparent authority, the court held that American Title was

**2.** There appears to be some confusion as to how many of the 176 title insurance policies that Marderosian issued involving Dean Street's condominium complexes are at issue in this case. In its amended complaint, American Title sought a declaration that it had no liability as to all 176 policies. Some of those policies, however, were not issued to East West but rather to Homeowner Financial Corporation, another originator/servicer of mortgages. Homeowner

subsequently sold the mortgages that were the subject of those policies to Bay Loan. The district court limited its ruling to the four projects in which East West was involved.

**3.** In its answer, Bay Loan also alleged counterclaims of negligence and tortious interference of contract. They were not pursued or proved at trial and were dismissed by the district court.

bound by the acts of its agent, Marderosian.

As to whether Bay Loan and East West "created, suffered or assumed" the risk, the court held that only if the insured intentionally established a defect or lien through its misconduct could the insurer avoid liability on the policy. The court found that "Bay Loan's actions totally lacked the intent necessary to fall within the 'created or suffered' policy exclusion." The district court similarly found little merit in American Title's other two liability defenses, that the bank had aided and abetted security fraud and that the policies lacked consideration.

The district court also dismissed without prejudice Bay Loan's and East West's claims for damages, finding them premature. Finally, the court dismissed their claim against American Title for bad faith refusal to pay on the insurance policies. The court reasoned that because "American Title raised a successful defense based on Bay Loan's inability to presently prove its losses," American Title did not act in bad faith by filing suit.

American Title appeals the district court's findings of liability under the policies. Bay Loan appeals the dismissal of its claim for damages and bad faith refusal to pay under the title insurance policies. We reverse and remand.

## Analysis

The only issue that American Title raises on this appeal that we address is whether Marderosian had apparent authority to issue and deliver title insurance policies that failed to show existing mortgage liens against the properties. As part of that claim, American Title argues that the court improperly placed the burden of proof on the principal, American Title, rather than the third parties attempting to bind the principal, East West and Bay Loan. The district court ruled that:

> American Title clearly held George Marderosian out to the world as its agent. Having clothed Marderosian with a general authority to act on its behalf, American Title has a heavy burden in

proving that third parties should be charged with knowledge of specific restrictions written ·into the agency contract. American Title has not met this burden.

A district court sitting in a diversity jurisdiction case must follow state substantive law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Moores v. Greenberg*, 834 F.2d 1105, 1107 (1st Cir.1987). The district court is to apply the substantive law, including choice of law rules, of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). When the highest court of that state has not spoken on the question at issue, we are obligated to determine how "the state's highest tribunal would resolve matters." *Moores*, 834 F.2d at 1107. "We look to 'such sources as analogous state court decisions, adjudications in cases elsewhere, and public policy imperatives.'" *Ryan v. Royal Ins. Co. of America*, 916 F.2d 731, 734–35 (1st Cir.1990) (quoting *Kathios v. General Motors Corp.*, 862 F.2d 944, 949 (1st Cir. 1988)).

■ Burden of proof is substantive in nature and therefore is governed by state law. *Palmer v. Hoffman*, 318 U.S. 109, 117, 63 S.Ct. 477, 482, 87 L.Ed. 645 (1943); *Sampson v. Channell*, 110 F.2d 754, 758 (1st Cir.), *cert. denied*, 310 U.S. 650, 60 S.Ct. 1099, 84 L.Ed. 1415 (1940); *see also Wynfield Inns v. Edward LeRoux Group, Inc.*, 896 F.2d 483, 491 (11th Cir.1990) ("The burden of proof is a substantive issue and is therefore controlled by state law in diversity cases."); 1A James W. Moore et al. *Moore's Federal Practice* ¶ 0.314 at 3149 (1991).

■ The district court placed the burden of proof on American Title to prove that Marderosian did not have apparent authority to issue title insurance policies that did not disclose prior encumbrances. Reading Rhode Island law, however, we find that it is Bay Loan and East West who had the burden of proving that Marderosian had apparent authority. *See Inleasing Corp.*

*v. Jessup*, 475 A.2d 989, 995 (R.I.1984) (A third party "must show that [the principal's] attorney could bind his client to the $1 million amount."); *H.W. Ellis, Inc. v. Alofsin*, 87 R.I. 252, 140 A.2d 131, 131–32 (1958) (third party "had the burden of proof on the issue of the authority of the [agent] to make such a contract."); *Goodman v. Zitserman*, 47 R.I. 466, 134 A. 4, 5 (1926) ("the duty of establishing [party's] agency to collect at the time of payment rested upon [third party]"). *See also Moreau v. James River–Otis, Inc.*, 767 F.2d 6, 10 (1st Cir.1985) (under Maine law "[t]he burden of proving apparent authority rests on the party asserting that the act was authorized") (footnote omitted); *Ferro Concrete Constr. Co. v. United States*, 112 F.2d 488, 491 (1st Cir.) ("A party who seeks to charge a principal for the contracts made by his agent must prove that agent's authority; and it is not for the principal to disprove it.") (citation omitted), *cert. denied*, 311 U.S. 697, 61 S.Ct. 136, 85 L.Ed. 452 (1940).

Because we find that the district court improperly placed the burden of proof on American Title as a matter of law, we need not address the merits of American Title's claim that Marderosian did not have the apparent authority to issue "clean" title insurance policies when there were prior encumbrances or other liens on the property.[4] The district court's error in placing the burden of proof on American Title to prove lack of apparent authority could not help but influence its analysis of the facts and their application to the appropriate state law principles of agency. The question of apparent authority is a threshold issue which either opens the door to the other issues or slams it shut. In light of such an error we cannot properly review the district court's findings as to the merits of the agency claim.

Because we find that the district court erred as matter of law in allocating the burden of proof on whether Marderosian had apparent authority to act for American Title, we need not reach the other issues raised by both parties on appeal. All the issues are dependent on the assumption that Marderosian had the apparent authority to issue the title policies, an issue that still remains in dispute in light of this opinion.

## Conclusion

We remand this case for a total new trial on the merits in light of the holding of this opinion.

*Reversed and Remanded.*

---

**4.** While Bay Loan in its brief concedes that Marderosian lacked actual authorization, East West still clings to the contention that Marderosian had actual authority to issue the title policies without exceptions. The written agency agreement between Marderosian and American Title, however, strictly forbade such a practice. It states in pertinent part: "In preparing American's binders and policies, Attorney will show as exceptions to coverage all matters disclosed by the opinion, such taxes, restrictions, conditions, easements and limitations ... and any other matters which constitute a lien or charge against the property...." We, in agreement with the district court, find that Marderosian lacked actual authority.